# Richmond.

## WHITEHURST v. THE COMMONWEALTH.

### November 20, 1884.

1. CRIMINAL JURISDICTION AND PROCEEDINGS—*Inquest.*—Proceedings before coroner are generally inadmissible as evidence at trial of indictment for murder. So likewise is opinion of witness as to tendency of evidence before coroner.

2. IDEM—*Instructions.*—An instruction correctly stating the law, and given in direct response to an inquiry from the jury, though seemingly abstract and foreign to the case, furnishes no sufficient ground to set aside the verdict. *Perkins' Case,* 7 Gratt. 654.

3. IDEM—*New Trial—After-discovered Evidence.*—New trial on this ground is granted under the circumstances following, viz: 1. The evidence must have been discovered only since the trial. 2. It must be evidence which could not have been discovered before the trial by exercise of reasonable diligence. 3. It must be material, and such as on another trial ought to produce an opposite result. 4. It must not be merely cumulative, corroborative, or collateral. *Wynne* v. *Newman,* 75 Va. 812.

4. IDEM—*Idem—Verdict contrary to Evidence.*—Great weight is due to the verdict of the jury, and new trial, solely on ground that it is contrary to the evidence, will be granted very cautiously, and only when the verdict is manifestly wrong.

Error to judgment of corporation court of Norfolk city, rendered 27th March, 1884, on an indictment against Charles L. Whitehurst for the murder of Junius A. Rogers on 20th January, 1884. Verdict, guilty of murder in the second degree, and confinement in the penitentiary twelve years. Judgment accordingly. To this judgment Whitehurst obtained from one of

the judges of this court a writ of error and *supersedeas*. Opinion states the case.

*Walke & Old*, for the plaintiff in error.

*Attorney-General F. S. Blair*, for the commonwealth.

HINTON, J., delivered the opinion of the court:

The prisoner, Charles L. Whitehurst, was indicted in the corporation court of the city of Norfolk, jointly with William A. Kemp and James T. Guy, for the murder of one Junius A. Rogers. Upon the trial he was found guilty of murder in the second degree, and sentenced to confinement in the penitentiary for a term of twelve years. Whereupon he obtained a writ of error from one of the judges of this court. As grounds for a reversal of that judgment he assigns four errors, which will be considered in the order in which they are presented in the petition.

The first of these is, that the court below refused to allow the verdict and proceedings of the coroner's jury to be read in evidence; and excluded the question, "was there any evidence before the coroner's jury that the blow on Rogers was inflicted by that axe?" and also excluded so much of the answer to said question as had been made in the following words, to-wit: "And they seemed to think it had something to do with the killing." No authority is cited in support of this exception, and indeed it is doubtful if any can be. But be this as it may, we are satisfied that there is no sound principle upon which the exception can be sustained. As to the branch of it which relates to the refusal of the court to admit the proceedings and verdict of the coroner's jury, it may be observed that these proceedings are usually conducted in this state, in the absence of the accused, without the aid of counsel, and often in the absence of the most material witnesses, both for the prosecution and the defence. To admit those proceedings, and a verdict thus arrived at, to be used as

evidence upon the trial, to influence, perhaps to control, the verdict of the jury, would, in our judgment, lead to the subversion and final overthrow of the jury system; whilst in nearly every case the rights of either the commonwealth or the accused would be inevitably prejudiced. *Crite* v. *Commonwealth*, Va. L. J., Sept. No., 1881, p. 568. Upon the second branch of this exception it is only necessary to say that it is amenable to the objection that it calls for the mere opinion of the witness as to the tendency of the evidence adduced before the coroner's jury in reference to the axe, and can be supported upon no recognized principle of law known to us.

The next assignment of error is, that the court, after the jury had been some time out, and had returned into court and announced that it was impossible for them to agree, upon the statement of two jurors that the jury desired to know, from the court, the different grades of murder and manslaughter, instructed them as follows: "Murder, at common law, is when a person of sound memory and discretion unlawfully kills any reasonable creature in being, and in the peace of the commonwealth, with malice aforethought, express or implied. It will be observed that the essential ingredient of murder as defined, is malice, and that it may be either express malice or implied malice. Express malice does not mean, necessarily, malice expressed in words, but is defined to be when the act is done with a sedate and deliberate mind and formed design, which condition of the mind and formed design being a mental condition and not ordinarily susceptible of other kinds of proof, may be evidenced by the external circumstances attending the execution of the act; such as, for instance, lying in wait, antecedent threats, old grudges, and need not be of any special duration before the blow—a moment is sufficient. Implied malice is where the law implies malice from the act itself, from which death ensues; as, for instance, when one, without any sufficient provocation at the time, slips up and without warning kills another, malice is presumed from want of provocation; when

one kills another with poison, malice is presumed from the use of poison; and when one deliberately uses a deadly weapon and death ensues, malice is presumed from the deliberate use of a deadly weapon. Such is murder at common law. But the statute of Virginia, without changing the definition of murder, says that murder, where the malice is evidenced in certain ways, shall be murder in the first degree, and where evidenced in other ways shall be murder in the second decree. Thus: murder, where malice is evidenced by use of poison, lying in wait, or by the commission of, or attempt to commit, arson, robbery, rape, or burglary, or by other circumstances showing a wilful, deliberate and premeditated killing, is murder in the first degree; all other murder (*i. e.*, malicious killing) is murder in the second degree; and when the homicide by the prisoner is once established, it is presumed to be murder in the second degree; and it rests with the prisoner to reduce it by evidence to a lower degree, and with the commonwealth to raise it to the higher by proof that it was wilful, deliberate and premeditated, but the will, deliberation and premeditation need not be of any special duration; if they existed for a moment before the blow, and the killing was done without provocation then or recently received, it is murder in the first degree.

"Manslaughter is when a person feloniously and unlawfully, but without malice, kills another; and it is divided into two classes:

"Voluntary manslaughter is the unlawful killing of another without malice in a sudden quarrel, or in heat of blood. But it is not every killing in the heat of blood, or upon sudden quarrel, which is voluntary manslaughter. In order to be so, it must be done without malice, such as I have defined; for the existence or want of malice is the distinction between murder and manslaughter. Involuntary manslaughter is when one in the performance of an unlawful act kills another by accident."

The first of these instructions is certainly unnecessarily long, and although largely couched in the language of the books, not

as perspicuous perhaps as it might be; but after a careful examination of it, as well as of the second instruction, we feel constrained to say, that regarding them as a general statement of the various grades of murder and manslaughter, which was all that the jurors asked for, they must be held to be sound, and not sufficiently complex to mislead a jury of ordinary intelligence. Indeed this plainly appears from the main objection which has been urged against them here, which is, that the statement that "when one deliberately uses a deadly weapon, and death ensues, malice is presumed from the deliberate use of a deadly weapon" is too general, and needs qualification. Undoubtedly if there was any evidence in the case tending to show that the prisoner at the time he struck the fatal blow was laboring under a reasonable apprehension that great bodily harm was about to be inflicted upon him, or that he struck the fatal blow under the impulse of sudden passion produced by some lawful provocation, these instructions could not be supported. But considering them, as we must, in the light of the facts and circumstances of this case, we cannot pronounce them fatally defective. Here, as the record clearly establishes, the prisoner and two other persons follow the deceased and his companion to the rear entrance of a bawdy house and engage in an altercation with them. Whereupon the prisoner, in the absence of any overt act on the part of the deceased, indicating a purpose to commit a felony upon him, and without having had any lawful provocation, deliberately strikes the deceased a blow with the axe, which causes his death. Upon this state of facts, the qualification of the language of the instructions, suggested by counsel for the accused, would have been inapplicable to any evidence in the case, and would have had a tendency to mislead the jury. *Hill's Case*, 2 Gratt. 595; *Mitchell's Case*, 33 Gratt. 874. Under all the circumstances of the case, the language of Lomax, J., in *Perkins* v. *Commonwealth*, 7 Gratt. 655, seems to be particularly appropriate in connection with these instructions. They were given by the court in "direct response to the inquiry which was

propounded by the jury for settling their doubts according to the views taken by them of the evidence in the case. The matters of law stated by the court * * were correctly stated. Even if it might seem to others than the jury an instruction upon what might be deemed abstract and foreign from the case, yet the verdict ought not to be set aside on that account, the judgment of the court being right upon the question submitted to it by the jury."

The next error assigned is the refusal of the court to grant the prisoner a new trial upon the alleged discovery of new evidence. As it has been over and again observed, applications of this character are rarely granted, and never except under very special circumstances, which may be stated as follows: 1. It must be shown by the party making the application that he was ignorant of the existence of evidence at the time of the former trial, which may usually be done by his affidavit. 2. The evidence must be such that it could not have been secured at the former trial by the exercise of reasonable diligence on the part of the applicant. 3. It must be material in its object, and not merely cumulative and corroborative or collateral. 4. It must be such as ought to produce, on another trial, an opposite result on the merits. *Brown* v. *Speyers,* 20 Gratt. 308; *Thompson's Case,* 8 Gratt. 637; *Wynne* v. *Newman,* 75 Va. 817; 3 Whart. Amer. Crim. Law (6th ed.), § 3166.

Now it is nowhere shown in this record that prisoner did not know what the testimony of Alson Douglass, which is the alleged after-discovered evidence now presented as the ground for the new trial, was. On the contrary, the presumption is strong, from the circumstance that it relates *merely* to statements said to have been made by one J. T. Murden, who was a witness for the commonwealth, to Douglass in regard to his testimony, that the prisoner, who had twice had *subpœnas* issued for Douglass, must have known what was the testimony of Douglass. If such was the case he is in default in not making the absence of Douglass a ground for an application for a con-

tinuance. But if this objection were removed, we still think this exception would be untenable. For the testimony of Douglass, which appears in his affidavit, only tends to discredit the witness, Murden, but leaves unimpaired the testimony of the witness, James T. Guy, and as Guy's testimony is the same as Murden's, we could not say that on a new trial the jury ought to come to a different result.

The fourth and last assignment of error is, that the verdict is contrary to the law and the evidence, and therefore a new trial should be awarded. Upon this head little need be said. As may be readily seen from the observations which have been heretofore made in regard to the second exception, we do not think the verdict was against the law. And upon the question of evidence, the jury, who are the proper judges of the weight to be attached to it, have passed. And as their verdict does not appear to be against the evidence, under the settled rule of this court it should not be disturbed.

The judgment of the corporation court of the city of Norfolk must be affirmed.

JUDGMENT AFFIRMED.