# Richmond.

## Field v. Commonwealth.

### February 16th, 1893.

1. SELF-DEFENSE.—A man is not justifiable in shooting another when there
is mere apprehension of immediate danger, no matter how sincere
such apprehension may be; but there must be an honest and *reason-
able* belief of such danger—that is to say, the act done, or circum-
stances existing, must be of such a character as to afford reasonable
ground for believing there is a design to commit a felony, or do
some serious bodily harm, and imminent danger of such design
being carried into immediate execution.

2. UNLAWFUL SHOOTING—*Verdict—New trial—Case at bar.*—From the evi-
dence disclosed by the record in this case—

HELD:

The verdict of guilty is warranted, and the after-discovered evi-
dence is immaterial.

Error to judgment of circuit court of Culpeper county,
rendered September 14th, 1892, affirming a judgment of the
county court of said county rendered July 23d, 1892, where-
by Henry Field, the plaintiff in error, was, in accordance
with the verdict of the jury in the trial of an indictment
against him for the unlawful shooting of Andrew Gordon,
sentenced to confinement in the penitentiary for two years.
Opinion states the case.

*Rixey & Barbour,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for commonwealth.

LEWIS, P., delivered the opinion of the court.

There are two assignments of error. The first is that the trial court erred in refusing to instruct the jury as requested by the prisoner, and the second is that it was error to overrule the motion for a new trial. This motion was based on two grounds—viz., (1) because the verdict was contrary to the law and the evidence, and (2) on the ground of newly-discovered evidence.

At the trial the evidence was conflicting. According to the evidence for the commonwealth, the shooting was unprovoked and of the most aggravated character; while for the prisoner there was evidence tending to show a case of self-defense; and in support of this theory the court was asked to instruct the jury as follows: " If the prisoner shot Andrew Gordon under the sincere apprehension of an immediate and actual danger to life, the jury will acquit the prisoner, even though the jury shall believe from the evidence that such danger was unreal. The guilt of the accused must depend upon the circumstances as they appear to him."

This instruction was rightly refused. The law of self-defense does not justify one man in shooting another, when there is a mere apprehension of immediate danger, no matter how sincere such apprehension may be; but there must be an honest and *reasonable* belief of such danger—that is to say, if the act done, or the circumstances existing, be of such a character as to afford reasonable ground for believing that there is a design to commit a felony, or to do some serious bodily harm, and that there is imminent danger of such design being carried into immediate execution, then the shooting, or even killing, will be justifiable; otherwise not. *Stoneman's Case,* 25 Gratt. 887; *Brown's Case,* 86 Va. 466; *New Orleans, &c., R. R. Co.* v. *Jopes,* 142 U. S. 18.

The next question is, Was there error in overruling the motion for a new trial?

As a witness for the commonwealth, Gordon testified that,

on the day of the shooting, he and the prisoner were hunting together; that, coming to a spring, he (the witness) knelt down to drink, and while he was in the act of drinking the prisoner struck him on the head with a stone, knocking his cap off into the spring; that upon getting up he found the prisoner confronting him, and that he asked him why he had struck him, to which he made no reply, but stood with his gun aimed at him; that he (the witness) then turned and fled, pursued by the prisoner, who fired at him, striking him with a number of shot, which knocked him down; that the prisoner then ran upon him and fired the second time, the gun being discharged close to his ear. He also testified that he had a small sum of money on his person, and that he believed the prisoner intended to kill him to get his money.

Another witness for the commonwealth, James Thorpe, testified that he was in the woods the day after the shooting, and found the prisoner's hat, several hundred yards from the spring, in the direction in which Gordon testified he was pursued by the prisoner.

Dr. Gibson, who attended Gordon after the shooting, testified that he found him in very bad condition; that he was badly shot and bruised; that he extracted twenty-two shot from behind the ear, and several from his back; that he had evidently been shot twice; that there was powder behind the ear, and that the hair on the head near the wound was scorched. The witness also testified that the only way he could account for the shot behind the ear not proving fatal was that there must have been nothing between the powder and shot. He also testified that he discovered on the back of the head a large tumor, which was evidently caused by a blow with a club or rock.

The prisoner's version of the matter was that he and Gordon got into an altercation about a turkey, which he (the prisoner) claimed to have shot; that this led to a fisticuff; that

in the fight he got Gordon down and beat him ; that the latter cut him with a knife, and when he let him up he cocked both barrels of his gun and threw it to his shoulder; that he (the prisoner) then raised his gun and fired, and that, as Gordon turned to run, the second barrel of the gun went off also, though unintentionally on his part. Gordon, he says, then ran in one direction and he in` another. He also testified that he shot in self-defense—that is, to prevent Gordon's killing him ; but admitted that the next day he fled from the state, because he was " scared " after hearing of Gordon's condition.

After the verdict was rendered there was a motion to set it aside, on the grounds already mentioned ; which motion was overruled, and the evidence (not the facts) is certified.

The after-discovered evidence relied on is substantially this : That one Vaughan, accompanied by Clay Brown, went to the scene of the difficulty early the next morning, and found the prisoner's hat about ten or twelve yards from the spring ; that he ·picked it up and carried it several hundred yards in the direction in which Gordon ran after the shooting, and then threw it down, where it was afterwards found by the commonwealth's witness, Thorpe. The bill of exceptions also states that the prisoner's counsel informed the attorney for the commonwealth of the existence of this newly discovered evidence, in the presence of the judge, after the jury had retired, but before the verdict was rendered, and offered to introduce it before the jury at once, with the consent of the court and of the attorney for the commonwealth, but that the latter would not consent. There was also the usual affidavit in such cases, which was afterwards used on the motion for a new trial.

We are of opinion that the motion was rightly overruled. It is a well-settled rule, repeatedly recognized by this court, that, to justify the granting of a new trial on the ground of after-discovered evidence, it must appear (1) that the evidence

was discovered since the former trial; (2) that it could not have been secured by the use of reasonable diligence on the applicant's part at the former trial; (3) that it is material, and not merely cumulative and corroborative or collateral; and (4) that it is such as ought to produce, on another trial, an opposite result on the merits. *Thompson's Case*, 8 Gratt. 637; *Read's Case*, 22 Id. 924; *Whitehurst's Case*, 79 Va. 556.

Assuming that the first three of these requisitions have been complied with in the present case, it is quite clear the evidence is not such as ought, on another trial, to produce an opposite result. The finding of the hat near the spring, where the crime was committed, does not, by any means, negative the evidence of Gordon that he was pursued by the prisoner, nor confirm the evidence of the latter to the contrary. It appears, moreover, from the affidavit offered in support of the motion, that the hat was found about ten or twelve yards distant from the spring, presumably in the direction in which Gordon fled, as the contrary is not stated; and whether the latter was followed by the prisoner ten or twelve yards, or two hundred yards, would not seem to be a very material circumstance. Indeed, it is not easy to see how, on another trial, an opposite result could be reached, even were it made to distinctly appear, on such trial, that Gordon was not pursued by the prisoner at all.

Besides, there seems to have been no formal application to the court to recall the jury, and to allow the evidence to be introduced before the verdict was rendered, but rather an informal application to the attorney for the commonwealth to consent to its introduction. At all events, what was done in the matter before the verdict was rendered was not excepted to, although recited in the bill of exceptions, and cannot be made a ground of error in the appellate court.

It is not denied that, upon the evidence before the jury, the

Opinion.

verdict must stand. Indeed, the evidence for the common-wealth, standing alone, shows a clear case of malicious shoot-ing. The jury, however, found a verdict of unlawful shoot-ing only. In this they were no doubt influenced by the con-flict in the evidence and the previous good standing of the prisoner as compared with that of Gordon. But, however that may be, the case comes up as on a demurrer to evidence, and, viewing it in that light, the judgment approving the verdict must be affirmed.

FAUNTLEROY, J., *dissented.*

JUDGMENT AFFIRMED.