BLACKWELL *v.* STATE.

(Division A. March 6, 1933.)

[146 So. 628. No. 30459.]

**W. H. Hughes**, of Jackson, and **J. D. Martin**, of Raleigh, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

McGowen, J., delivered the opinion of the court.

Blackwell was tried in the circuit court of Smith county on a charge of murdering an unnamed infant born to Mrs. Mary Stearns Jernigan, and was convicted and sentenced to serve a life term in the state penitentiary.

As we have determined that this case must be reversed and remanded for another trial, we deem it unnecessary to set forth in detail a statement of the facts and circumstances of the case.

The evidence to sustain the conviction rests almost entirely upon the testimony of Mary Stearns Jernigan, a woman twenty-seven years of age, not living with her husband. She lived with her father, mother, and brother, and on a certain afternoon in June, 1932, gave birth to a child. She charged that the appellant was the father of the child, and that he alone was present at the time of its birth, carried the living child away from her home, and, on the following morning, told her the child was dead. On August 18, 1932, the body of a fully matured child was found buried in the sand about seventy-five yards from her home. No witness would say that the dead child was the one born to Mrs. Jernigan.

There were facts adduced at the trial which, though "not so deep as a well nor so wide as a church door," were, in our opinion, sufficient to warrant the submission of the issue to the jury, and upon which the court was warranted in refusing to grant the peremptory instruction requested by the appellant. This peremptory instruction was requested on the ground that the state had not shown that the child in question was the identical child born to Mrs. Jernigan; that, if that fact was proven, it was not shown that it came to its death by a criminal agency, and, further, that the venue was not shown, that it was not shown that the child was killed in any particular county in the state of Mississippi.

In the course of the trial, one J. D. Austin was called

as a witness for the state, and testified that he is a justice of the peace for that county, and that he caused to be held a coroner's inquest of the death of the infant at the grave thereof. The entire record of that inquest was introduced at the trial, and the verdict of the jury at the inquest was read in evidence which is as follows: "We, the jury, sitting in inquiry over the body of the infant child, find that said infant child came to its death by foul and violent means at the hands of unknown person or persons." This was signed by six members of the jury. When this verdict and record were offered in evidence, the defendant made seasonable objection thereto, which was overruled by the court.

The action of the court in permitting this verdict of the jury in the coroner's inquest held under chapter 15, Code of 1930, to be introduced at the trial, is assigned as being prejudicial error to the rights of the defendant.

Section 26 of the state Constitution of 1890, among other things, provides that, "In all criminal prosecutions the accused shall have a right . . . to be confronted by the witnesses against him."

The statutory proceedings of a coroner's inquest are ex parte proceedings, and the findings of a coroner's jury, as indicated by the name, constitute an inquisition or inquiry into the cause of death of a particular individual. It is wholly ex parte. The verdict of a coroner's jury is not binding on the defendant on trial for the murder of a person found to have died from unnatural causes. It would be unfair to a defendant to permit him to be tried upon an ex parte or coroner's jury verdict. To do so would deprive a person on trial of the right of cross-examination, and of his right to be confronted by the witnesses whose testimony brought about his conviction. The verdict in the case at bar was based upon an investigation, and may or may not have been based on evidence receivable in courts of justice.

In the instant case, one sharply disputed point of in-

quiry was the identity of the infant in question, and whether or not it came to its death by a criminal agency. The case is largely circumstantial as to whether or not the infant born to Mrs. Jernigan was slain. The rule is stated in R. C. L. vol. 6, p. 1172, as a part of section 9, as follows:

In cases of homicide, the general rule is that the finding of a coroner, or the verdict of a coroner's jury as to the manner and cause of the death of the deceased, is not admissible in evidence for any purpose. The only object and result of a coroner's proceeding is to furnish prompt information which may guide the officers of the law in apprehending and prosecuting those who appear to have been connected with a supposed homicide, and by discovering the evidence by which it may be investigated; and, strictly speaking, it has no legal effect. The verdict and proceedings are therefore inadmissible in evidence in such a case, as to admit them to be used as evidence on the trial, to influence, perhaps to control, the verdict of the jury, would lead to the subversion and final overthrow of the jury system; whilst in nearly every case the rights of either the commonwealth or the accused would be inevitably prejudiced. See Smalls v. State, 101 Ga. 570, 28 S. E. 981, 40 L. R. A. 369; Colquit v. State, 107 Tenn. 381, 64 S. W. 713; Whitehurst v. Commonwealth, 79 Va. 556; Bass v. State, 29 Ark. 142; State v. Garth, 164 Mo. 553, 65 S. W. 275.

The Louisiana court seems to be in conflict with this general rule. It seems to be there held that the statute authorizing the use of the coroner's record before the grand jury would authorize its use before a trial jury. See State v. Duffy, 39 La. Ann. 419, 2 So. 184. But we do not analyze the Louisiana court's position, as we are not in accord with it, and prefer to adopt the rule which we believe to be generally controlling in this country, and which we deem fundamentally sound.

In response to the attorney-general's argument that

the record of the coroner's inquest and the verdict of the jury were not prejudicial to the rights of the defendant, even though it may have been incompetent, we will say that his argument is without force in this case. This record was deadly, and one likely to influence the trial jury. It was certainly ex parte, the opinion of six men that the particular infant came to its death by foul and violent means, but it was calculated to turn the scale against the defendant in the minds of the trial jury upon a most vital issue in the case.

We cannot conceive of any hearsay testimony that would be more fatal than was the verdict of the coroner's jury submitted to the trial jury in the case at bar. It was highly prejudicial, and, in our opinion, denied him a constitutional right as indicated above.

Reversed and remanded.