376 So.2d 1349 (1979)
Joe HUGHES
v.
STATE of Mississippi.
No. 51514.
Supreme Court of Mississippi.
November 21, 1979.
*1350 Burdine & Austin, Curtis H. Austin, Columbus, for appellant.
A.F. Summer, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and COFER, JJ.
PATTERSON, Chief Justice, for the Court:
A verdict of guilty and a sentence of life imprisonment resulted from the non-capital murder trial of Joe Hughes in the Circuit Court of Noxubee County. Hughes appeals, assigning as error: (1) that the trial court erred in admitting Hughes' confession, (2) erred in refusing to grant a mistrial following an improper remark by a witness concerning the verdict of a coroner's inquest, and (3) erred in refusing a proffered instruction concerning Hughes' intoxication at the time of the offense. We affirm.
A substantially undisputed sequence of facts culminated in the death of Dillard Prisock. On Sunday, April 23, 1978, Andy Billups and Dillard Prisock met before noon and drove around in Winston County. Just outside of Louisville, they met Joe Hughes, who accompanied them as they traveled toward the Crawford community. The three drank liquor together from about noon onward that day as they "cruised" around.
Sometime after the trio had paused for gas and beer, they stopped by the side of the road, and Prisock and Hughes got out to relieve themselves. Billups heard Prisock cry out, and upon investigation discovered that Hughes had knocked Prisock down with a baseball bat. Hughes told Billups that he had done so because Prisock had pulled a knife on him; however, Billups did not see any weapon in Prisock's possession at any time that day. Apparently uninjured by the blow, Prisock got back in the car and continued down the road with Billups and Hughes.
Eventually the car became mired on a farm road running through a field in Noxubee County. Billups testified that he and Prisock jacked the car up to extricate it, but the jack slipped, causing a part of it to be lost. Darkness had fallen, and Prisock improvidently *1351 struck a match to locate the missing part. The match ignited the automobile's leaking gas tank, engulfing it in flames.
Consuming the remaining contents of a bottle of liquor, Hughes walked down the road with Prisock and Billups, who were "trying to figure out how ... to get home." An argument between Prisock and Hughes ensued. It came to an end when, according to Billups, Hughes "pushed . . Prisock down on the ground and ... [cut] him across the face... ." Hughes then got up and asked Billups, "Is Mr. Prisock dead?" Throwing his knife away, Hughes followed Billups. They stopped at several houses before successfully soliciting a ride into town.
On Monday, April 23, 1978, Johnny Heard discovered Prisock's body in a ditch beside the farm road running through his field. The body lay about one-half a mile away from the charred automobile. Mr.Heard sat on the coroner's jury which determined the cause of death to have been lacerations about the throat and head. On Tuesday, April 25, 1978, authorities, with the help of Hughes, located a bloodstained knife in the soybean field several yards away from the site where the body was discovered.
The defendant testified. When asked on cross-examination, "what Andy [Billups] told happened and what you told happened sounds pretty much alike, doesn't it?" Hughes answered, "I guess so; yes, sir."
Indeed, Hughes' testimony closely resembles that of Billups. He admitted hitting Prisock with a bat during a roadside stop. Moreover, he admitted "cutting" Prisock with a knife. When asked why, Hughes answered:
Well, really, I don't know myself; I've been asking myself that, why did I cut him. I don't know. It wasn't because I 'sider myself bad or nothing like that. I just don't know why I cut him. If I said he kicked me or hit me or something, I would be lying, so I just don't know why I cut him.
Hughes also remembered getting $10 out of his victim's wallet and throwing the knife into the field.
Over objection by the defense, the trial court admitted handwritten and typewritten signed versions of the statement which Hughes had given in the presence of sheriff's deputy James Barnett. The statement is nearly identical to Hughes' testimony at trial.
It should be noted that an accused by becoming a witness at trial does not ipso facto waive his previous objection to the introduction of an out of court custodial admission. If the out of court admission was erroneously admitted, that error would be compounded by placing undue influence upon the accused to testify, thereby eroding the voluntariness of his testimony. Keys v. State, 283 So.2d 919, 927 (Miss. 1973); People v. Spencer, 66 Cal.2d 158, 164, 57 Cal. Rptr. 163, 169, 424 P.2d 715, 719 (1967); cf. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1967) (sworn testimony from previous trial held inadmissible in latter trial where testimony at previous trial was motivated by prior introduction of illegally obtained confession).
Here, however, it does not appear that Hughes' out of court admission was erroneously admitted. Walker Tucker, an investigator for the Mississippi Highway Patrol, testified that upon arresting the appellant on the night of April 24, 1978, he advised him of his rights prior to escorting him out of his living room. In the police car outside the home, Tucker again read the appellant his rights, "one sentence at a time to make sure he understood them and he indicated he did and signed the waiver of rights form." At the sheriff's office Tucker again reminded the appellant of his rights and advised those rights still applied. The great weight of the testimony taken at the suppression hearing indicates neither Tucker nor any of the other investigating officers used force, threats, or promises to obtain either the oral statement given on the night of the 24th or the similar written statement given two days later.
Moreover, the appellant recalled signing the waiver and having it read to *1352 him. From his testimony, we cannot escape the conclusion that he voluntarily and with full understanding of the constitutional rights at stake signed the waiver and confessed because he wanted to get the matter "off his chest." The fact that the appellant had little formal education and was not represented by counsel does not preclude an effective waiver of his right to remain silent or to have counsel present during custodial interrogation. Lee v. State, 338 So.2d 399 (Miss. 1976), noted 49 Miss.L.J. 143 (1978). The question of waiver must be resolved with reference to the "totality of the circumstances." Fare v. Michael C., ___ U.S. ___, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The circumstances before us make it clear that the trial court properly denied the appellant's motion to suppress.
By his second assignment of error the appellant contends the trial court erred in denying his motion for a mistrial. The motion was based upon the fact that Heard, a member of the coroner's jury, answered "murder" in response to the question of whether the cause of death had been determined. The trial judge recognized the impropriety of this remark, see Blackwell v. State, 166 Miss. 524, 146 So. 628 (1933), and immediately cautioned the jurors to disregard it. He further asked the jurors if any felt themselves unable to disregard the remark to raise their hands, and none did so. Under these circumstances, we conclude no prejudicial error resulted. Butler v. State, 375 So.2d 1039 (Miss. 1979); Duke v. State, 340 So.2d 727 (Miss. 1976); Forrest v. State, 335 So.2d 900 (Miss. 1976); Herron v. State, 287 So.2d 759 (Miss. 1974).
By his third assignment of error the appellant contends the trial court erred in refusing to grant an instruction reading: "The court instructs the jury that although intoxication is not a defense, it can be considered in determining whether or not a person could have formulated the intent necessary in a specific intent crime."
The state correctly observes this instruction is objectionable because abstractly stated. Quick v. State, 309 So.2d 859 (Miss. 1975); Kidd v. State, 258 So.2d 423 (Miss. 1972). As worded, and even if read in conjunction with the manslaughter/self-defense instruction which was granted, it fails to state correctly the legal consequences of intoxication. See McDaniel v. State, 356 So.2d 1151 (Miss. 1978). We therefore decline to put the trial court in error for refusing this instruction.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.