WALKER, Justice, for the Court:
This is an appeal from the Circuit Court of the Second Judicial District of Hinds County, Mississippi, which affirmed the conviction of George M. Mitchell by the County Court for acting as a real estate broker without a license. We affirm.
Mississippi Code Annotated section 73-35-1 (1972), makes it unlawful “ . . . for any person, partnership, association or corporation to engage in or carry on, directly or indirectly, or to advertise or to hold himself, itself, or themselves out as engaging in or carrying on, the business, or act in the capacity of, a real estate broker, or a real estate salesman, within this state, without first obtaining a license as a real estate broker or real estate salesman as provided for in this chapter.”
Acts which constitute doing business as a real estate broker are found in Mississippi Code Annotated section 73-35-3 (1972), which provides, in part, as follows:
(a) The term “real estate broker” within the meaning of this chapter, shall include all persons, partnerships, associations and corporations, foreign and domestic, who for a fee, commission, or other valuable consideration, or who with the intention or expectation of receiving or collecting the same, lists, sells, purchases, exchanges, rents, leases, appraises, or auctions any real estate, or the improvements thereon including options, or who negotiates or attempts to negotiate any such activity; or who advertises or holds himself, itself or themselves, out as engaged in such activities; or who directs or assists in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction; ....
The appellant, in effect, contends that the verdict is against the overwhelming weight of the evidence.
On appeal, the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to support the verdict. Murphree v. State, 228 So.2d 599 (Miss.1969), cert. denied, 397 U.S. 1068, 90 S.Ct. 1509, 25 L.Ed.2d 690.
With that rule in mind, the evidence for the state showed that in 1977 the appellant, George M. Mitchell, approached Richard Kimbrough, President of Kimbrough Investment Company at Kimbrough’s home office located in Jackson, Hinds County, Mississippi, after learning that they were interested in selling the Sheraton-Biloxi Motor Inn owned by the Kimbrough interest. Mr. Kimbrough testified that Mitchell “ . . . told me he could sell the hotel and that he was going over in the Middle East and he had a lot of connections over there in Kuwait and Egypt and that sort of thing. I had written embassies of Iran and Iraq and all of them, but I hadn’t gotten any interest. But George was pretty convincing that he knew the sheiks and that he could sell the hotel and get what we wanted. So that’s when it started, in early ’77.”
On one occasion during the discussions, Kimbrough told Mitchell that he thought that the deal was too large for him to handle, whereupon Mitchell replied, “You don’t know what I can sell.... I’ve sold apartments, stores and other things.”
When asked if a fee or commission was ever discussed with George Mitchell, Kimb-rough replied:
*331 Yes, sir, it was. It was discussed orally and written in these letters, (sic) I referred to that we would pay a two per cent commission....
Thereafter, after numerous meetings between Mr. Kimbrough and Mr. Mitchell and a number of letters from Mr. Kimbrough to Mr. Mitchell, Mr. Kimbrough personally handed Mr. Mitchell the following letter while in Mr. Kimbrough’s office in Jackson. That letter reads as follows:
“January 5, 1979
Mr. George Mitchell
MGM Company
Vicksburg, Mississippi
Dear George:
We are willing to pay a maximum Real Estate commission of 2% on the sale price of $6,000,000 on the Sheraton-Biloxi Motor Inn, provided it is a straight total cash, net to us and provided we do not have to do the selling and negotiating ourselves.
In the event the offer is for less, or we are required to enter into the sales work, we will negotiate our commission downward. Also, you have permission to show and sell this property on the above terms for only 30 days from today. After this date do not attempt any further sales efforts as we are withdrawing our listing. This is an open, 30 day listing, not exclusive, subject to prior sale.
Very truly yours,
KIMBROUGH INVESTMENT COMPANY
Owners and Operators of The Sheraton-
Biloxi Motor Inn
Richard H. Kimbrough
President and Chief Executive Officer”
Kimbrough also gave Mr. Mitchell a letter outlining the terms and conditions on which the Kimbroughs would sell the Sheraton-Biloxi Hotel.
On cross-examination, Mr. Kimbrough was asked whether Mitchell had ever mentioned buying the property as a principal or with someone or whether he was trying to sell it strictly as a real estate broker, to which Mr. Kimbrough replied: “. . . Well, both. One time he was talking about sheiks from over in the Far East, and then another time he was talking about he could sell it to oil people or contacts that he had made. So I really didn’t know what he was talking about. And that is the truth. He had me so confused I didn’t know what he talked about from time to time.”
After considerable discussions and correspondence between Kimbrough and Mr. Mitchell, and after Kimbrough gave Mr. Mitchell a letter listing the property, Mr. Mitchell contacted Mr. John R. Neyrey who was President of Production Oil Corporation with offices in Biloxi. Mr. Neyrey testified Mr. Mitchell’s initial statement to him was “ .. . that he had an exclusive listing on the property as well as an exclusive option [to purchase] the hotel.” Mr. Neyrey testified that Mr. Mitchell claimed that he had an option to purchase the hotel but they could not come to terms, and that Mitchell “ ... indicated to me that he had an exclusive listing on the property also and that he could deliver the property to us for a price of four million seven hundred and fifty thousand dollars, plus his commission.” When asked whether there was any discussion by Mitchell concerning a commission, Neyrey testified: “Well, he indicated that he had this exclusive option and, of course, we didn’t talk about commissions up front. ... At some later date beyond the initial meeting a six per cent commission was discussed and negotiated.” Neyrey further testified that several days later he “ . . . informed Mr. Mitchell that I wanted to negotiate directly with Mr. Kimbrough rather than have to go back and forth through him because I wanted to move relatively fast. Once we made up our minds to consider the property we wanted it done very quickly, and he did not have all the answers or information concerning the property. So I wanted to negotiate directly with Kimbrough and get Mr. Mitchell to accept a release based upon a guarantee that he would get his commission.”
Thereafter, Mitchell executed a release allowing Mr. Neyrey and Mr. Kimbrough to deal directly with each other. The release *332 was dated January 25,1979, and was signed by George Mitchell, John R. Neyrey and Production Oil Corporation. The release provided, in part, as follows:
WHEREAS, party of the first part has a certain understanding and agreement with the present owners of the Biloxi Sheraton Hotel located within the City of Biloxi, Harrison County, State of Mississippi; and
WHEREAS, party of the first part, pursuant to the aforesaid contract and agreement with the owners of the Biloxi Sheraton Hotel, would otherwise be entitled to certain remunerations from said owners in the event of the sale of the said Biloxi Sheraton Hotel, . . .
The release also provided for a consideration of $175,000.00 to be paid by Neyrey to Mitchell if Neyrey purchased the Biloxi-Sheraton Hotel and authorized Neyrey to deal directly with the Kimbrough interest.
Mitchell did not testify in his behalf. His defense was that he never represented himself to be a real estate broker or salesman and that at the time he executed the release he made it clear that he was not a real estate broker or real estate salesman. As a part of his defense, Mitchell presented several witnesses who testified they had discussed the possibility of a group purchasing the hotel, including Mr. Mitchell as a principal. Mitchell also presented evidence that he had contacted a bank about the possibility of financing such a transaction. He argues strenuously that he had an interest in the hotel, presumably the unexclusive right to purchase it and that he was foregoing exercising that right in consideration of remuneration provided for in the contract with Mr. Neyrey.
The state presented evidence, and it is undisputed, that Mr. Mitchell was not a licensed real estate broker or real estate salesman in Mississippi.
We have carefully considered this record and find the evidence clearly supports the verdict of the jury that Mr. Mitchell was acting as a real estate broker without a license in that he requested from and accepted a letter granting him a listing, although not exclusive, for a period of thirty days to sell the hotel, and the evidence is clear that he was to receive a commission if he were successful in that endeavor. In so doing, Mr. Mitchell was in violation of Mississippi Code Annotated section 73-35-1, as defined in section 73-35-3(a) (1972) which provides, in part:
The term “real estate broker” within the meaning of this chapter, shall include all persons, . . . who for a fee, commission, ... or who with the intention or expectation of receiving or collecting the same, lists, sells, ... or who negotiates or attempts to negotiate such activity; ... or who directs or assists in the procuring of a purchaser or prospect calculated or intended to result in a real estate transaction. . . .
The fact that Mr. Mitchell could have purchased the hotel on his own as a principal is immaterial and is not inconsistent with his also having obtained a listing from Kimbrough to sell the hotel to others. It is also no defense that Mr. Mitchell did not expressly represent himself to be a real estate broker or salesman since his dealings with Kimbrough and Neyrey with reference to the hotel were in violation of Section 73-35-1 as defined in Section 73-35-3(a). As is often said, “A rose by any other name” [1] smells the same. In this instance, the fragrance was clearly that of real estate broker.
The appellant’s contention that venue was not proved in Hinds County is wholly without merit.
We are of the opinion that the verdict of the jury was fully supported by the evidence.
The judgment and sentence of the Circuit Court affirming the judgment and sentence of the County Court are affirmed.
AFFIRMED.
*333 PATTERSON, C. J., ROBERTSON, P. J., and SUGG and BROOM, JJ., concur.
LEE, J., SMITH, P. J., and BOWLING and HAWKINS, JJ., dissent.

. “ ... That which we call a rose
By any other name would smell as sweet.” Romeo and Juliet, i, iv.