413 So.2d 1007 (1982)
Leo E. EDWARDS
v.
STATE of Mississippi.
No. 53298.
Supreme Court of Mississippi.
April 14, 1982.
Rehearing Denied May 26, 1982.
*1008 Stanfield & Holderfield, Percy S. Stanfield, Jr., Jackson, for appellant.
Bill Allain, Atty. Gen. by Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
BROOM, Justice, for the Court:
The death penalty was ordered at Leo E. Edwards' trial upon an indictment charging him with the murder of Lindsey Don Dixon while engaged in the commission of robbery. Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1981).[1] Trial was in the Circuit Court of the First Judicial District of Hinds County, the Hon. William F. Coleman, presiding. Edwards (defendant herein) appeals and asserts that the trial court erroneously (1) excused a juror for conscientious scruples against the death penalty, (2) failed to instruct the jury on circumstantial evidence, (3) allowed the state to "show a separate and distinct crime," (4) refused to reduce the "charge to murder," (5) admitted into evidence a "photograph of deceased," (6) held the evidence was sufficient, (7) allowed defendant's co-indictee to receive a life sentence, and (8) denied defendant "effective assistance of counsel." We affirm.
Defendant Edwards, his girl friend, and his co-indictee Mikel Leroy White, drove around in Jackson during the early hours of June 14, 1980. Some time later that morning, at defendant's request, White drove defendant to a convenience store on Hanging Moss Road in Jackson. Defendant's stated purpose was to get money from a girl friend who worked there. At a nearby intersection, defendant exited the car and told White to go "one block down" and wait on a side street, which White did. After parking, White went to sleep and not long afterwards, White was awakened by defendant who reentered the car carrying a brown bag and an automatic pistol. At trial, the pistol, which had been confiscated, was identified by White. White's testimony was that the defendant told him, "Let's go, I shot somebody."
Lindsey Don Dixon was the clerk in charge of the store, a Stop-N-Go Market. Dixon's fiance, a Miss Singleton, telephoned him about 4 a.m. on June 14, 1980, and during their phone conversation, Dixon put the phone down on his end of the line after telling her to "hold on." Promptly, Miss Singleton heard a gunshot followed by silence. She alerted the police and at about 4:30 a.m. officers went to the Stop-N-Go where they found Dixon dead in a pool of blood  shot in his chest. Money was missing from the cash drawer which was in disarray. Dixon's cause of death was determined to be internal bleeding resulting from the bullet wound.
That same morning, White heard a radio news report of a store clerk's slaying on Hanging Moss Road and mentioned the report to the defendant. In reply the defendant told White he "shot the sucker" so he (the defendant) would not be identified. White testified that the defendant gave him some money after the killing but he didn't remember how much. During the *1009 early part of June 15, Officer Williams proceeded to a local rooming house to investigate a report that a woman was being threatened at gunpoint. Officer Williams found the defendant there brandishing a pistol which the officer confiscated, but the defendant escaped into the crowd. Ballistics tests established that the projectile which killed Dixon was fired from this pistol.
Three days later, on June 18, 1980, the defendant and White were stopped in North Mississippi on a traffic violation. A fictitious name was given by the defendant who was intoxicated. The two men were taken into custody and a routine check revealed they were wanted for armed robbery and murder. After the officers there obtained a search warrant, two pistols were taken from the car's trunk. At the March, 1981 court term, the defendant was found guilty and sentenced to death.
First argument made relates to the exclusion of juror Hibler on the ground of "conscientious scruples" against the death penalty. Juror Hibler was asked by the circuit judge if she could follow the testimony and instructions of the court although the "verdict could result in the death penalty"; juror Hibler said, "I couldn't."
Upon this state of juror Hibler's voir dire examination, she was excused and the defendant urges reversible error under Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Having categorically stated that she couldn't follow the testimony and instructions of the court, we think that the juror was correctly excluded. The fact that upon questioning by defense counsel, Hibler stated she would try to be a "fair" juror did not qualify her in this case. Similar argument was made in Edwards v. State, supra, n. 1, but there the sentence was life imprisonment whereas here the sentence is death. Thus, the two cases are not precisely analogous. For an excellent explanation of the proper method of bringing the death penalty to the attention of the special venire in capital cases, see Armstrong v. State, 214 So.2d 589 (Miss. 1968).
The second issue raised is that the lower court erred in failing to instruct the jury on circumstantial evidence. There is no merit to this argument because the defendant's accomplice, co-indictee White, gave direct testimony about the defendant's activities on the occasion in question. White's testimony was that he took the defendant to a place near the Stop-N-Go Market on Hanging Moss Road where the defendant exited after stating he was going into the store. Shortly thereafter the defendant returned with a brown bag and pistol and stated that he had shot someone in the store to prevent his (defendant's) later identification. Later he told his co-indictee White that he "shot the sucker." Some money was given White by the defendant. In view of the testimony of the defendant's accomplice, the case against the defendant was not wholly circumstantial and therefore he was not entitled to a jury instruction which he sought on circumstantial evidence. Bullock v. State, 391 So.2d 601 (Miss. 1980).
Thirdly, the defendant argues that he was denied a constitutionally fair trial because the state was allowed to show a "separate and distinct crime." His contention is that the lower court erred in allowing Officer David Williams to give hearsay testimony that the appellant had threatened to kill a woman over some money. The matter came up when the state, in presenting its case in chief, offered the testimony of Officer David Williams who was called for his testimony regarding his seizure of a pistol from the defendant which was later established to be the weapon used in the murder of the deceased Dixon. The testimony in question of Officer Williams was as follows:
Q. About what time was this?
A. Approximately 3:00 o'clock in the morning.
Q. Just continue as to what was happening at that time.
A. At that time, we were engaged in a brief conversation with Mr. Freddie Tubbs when we received information *1010 that an individual was across the street at a rooming house in the doorway with a weapon and the individual stated that he was gonna kill a girl over some money.
Following the above testimony, the defendant objected and the jury was excluded while the matter was considered by the judge and the lawyers. At that time, defense counsel agreed to the court's offer to admonish the jury to disregard the statement. The court admonished the jury not to let the testimony in question "have any bearing" on their verdict and the record clearly shows that each juror raised his hand indicating his willingness to follow the court's admonishment. The record does not indicate that the state intentionally elicited the hearsay report, but only asked Officer Williams, "What was happening at that time." Our rule is that absent a showing to the contrary, jurors are presumed to follow the court's direction with regard to testimony. Hughes v. State, 376 So.2d 1349 (Miss. 1979); Butler v. State, 375 So.2d 1039 (Miss. 1979); Gray v. State, 375 So.2d 994 (Miss. 1979); Duke v. State, 340 So.2d 727 (Miss. 1976).
We think the record clearly shows that the challenged testimony was not elicited to establish its truth or to establish that the defendant killed Dixon. As to the taking of the gun from the defendant, defense counsel stated, "We have no qualms with that." No motion or request for a mistrial was made by the defense and the court granted the defense all that was requested. In view of the context of the testimony and the court's admonishment of the jurors, the argument does not warrant reversal.
Fourthly, the defense argues that the lower court erred in denying the defendant's motion to reduce the charge against him to murder. Apparently he contends that the state's evidence did not prove a robbery within the purview of § 97-3-19(2)(e) which makes killing in the commission of robbery a capital offense.
Testimony of the state included that of Vera Avalon, a district supervisor for Stop-N-Go Markets. She stated that when she surveyed the store shortly after Dixon was shot, she discovered over a hundred dollars missing from the cash register. According to the record, investigating law officers found strewn about the floor of the store in random fashion several checks and small change. Dixon's body was found in an adjoining storage area of the store. Mikel White, the defendant's accomplice and co-indictee, testified that shortly after the event he was given money by the defendant knowing that "he had got it from the store," but he accepted it anyway so that the defendant would not "do anything" to him. We think this evidence plus the defendant's statement that he "shot the sucker" sufficiently established the crime of robbery. This is the only logical conclusion that can be drawn from the above evidence and from the lack of evidence that anyone else was connected with the store robbery or Dixon's death. Clearly the testimony, together with reasonable inferences to be drawn from it, sufficiently proved the crime of robbery. Mitchell v. State, 402 So.2d 329 (Miss. 1981); McDaniel v. State, 356 So.2d 1151 (Miss. 1978). A similar argument was made in Voyles v. State, 362 So.2d 1236 (Miss. 1978), cert. den. 441 U.S. 956, 99 S.Ct. 2184, 60 L.Ed.2d 1059 (1979). As was true in Voyles, the jury in the present case was adequately instructed concerning the standard of proof necessary to find the existence of a robbery. Jury Instruction No. 7 contained the following language:
The Court instructs the Jury that if you believe from the evidence in this case, beyond a reasonable doubt that on June 14, 1980, in the First Judicial District of Hinds County, Mississippi, Leo E. Edwards, did then and there wilfully, unlawfully and feloniously take and carry away the personal property of another from the presence of Lindsey Don Dixon, and from his person, against his will and by violence to his person, to-wit: $111.23, good and lawful money of the United States of America, or any amount, belonging to National Convenience Stores, Incorporated, A Texas Corporation, d/b/a Stop N Go no. 1075, then in the possession *1011 and under the control of Lindsey Don Dixon, then and in that event the Defendant, Leo E. Edwards is guilty of robbery; ... .
As requested by the defendant, the court instructed the jury even more explicitly:
The Court instructs the jury that one of the essential ingredients of capital murder, as charged in the indictment, is that the killing was committed while the Defendant was then and there engaged in the crime of robbery;
The Court, therefore, instructs the Jury that in this case, unless you can say on your oath that beyond a reasonable doubt Leo E. Edwards was guilty of killing the deceased while he was then and there engaged in the crime of robbery, then it is your sworn duty to never convict Leo E. Edwards of Capital Murder, even though you may believe from the evidence beyond a reasonable doubt that he is guilty of murder.
The evidence of robbery was sufficient to submit that issue to the jury, and to support its finding of guilty beyond a reasonable doubt. Instructions given the jury on robbery were adequate, and accordingly the lower court did not err in refusing to reduce the capital murder charge to a lesser offense.
Fifth argument made is the contention that the lower court erred in admitting into evidence a photograph of the deceased used during the testimony of forensic pathologist Dr. Rodrigo Galvez. The black and white photograph was of the deceased's body and depicted a single bullet wound to Dixon's chest. No contention is made that the photograph was not an accurate portrayal of what was included on the photograph. Our examination of the picture reveals that it is not especially gruesome and it does not show any heinous mutilation of the body, but simply establishes that the deceased's chest wound was a small caliber bullet hole. It cannot be logically said that the photograph was not helpful in enabling the doctor to describe and relate his findings. Established law in this state is that the admissibility of a photograph usually rests within the trial judge's sound judicial discretion, and we will uphold the admissibility of a photograph absent some showing of an abuse of discretion, which is not established in the present case. Steed v. State, 396 So.2d 625 (Miss. 1981).
The sixth proposition asserted by the defendant is that the jury verdict of guilty was against the weight of the credible evidence. Sifted from the testimony in the record and summarized are the following facts:
(1) Lindsey Don Dixon was murdered during a robbery of the Stop-N-Go where he worked.
(2) At the defendant's request, Mikel White let him out near a store where Edwards told White he was going into and where Dixon was killed.
(3) Promptly defendant exited the store and related that he had shot someone.
(4) White was given part of the loot by the defendant.
(5) Next day White was told by the defendant Edwards that he had "shot the sucker" to avoid identification.
(6) The gun used in the killing was recovered from the defendant's possession.
Having before it the testimony which establishes the above facts, we think the jury verdict was supported by the testimony establishing the defendant's guilt beyond a reasonable doubt. Although some of the testimony was circumstantial, the circumstantial evidence together with the testimony of co-indictee/accomplice White presented a strong case.
The seventh argument is that the lower court erred in "permitting abuse of prosecutorial discretion in allowing appellant's co-indictee to plead guilty to a life sentence for murder." Selectivity of the district attorney as to "whom he wishes to attempt to put to death" is the basis of the argument which asserts that White was allowed to plead guilty to the reduced charge of murder and receive two life sentences in return for "an agreement to testify" against Edwards.
*1012 In Culberson v. State, 379 So.2d 499 (Miss. 1979), we affirmed Culberson's conviction and death sentence and rejected his argument of abuse of prosecutorial discretion in allowing his co-indictee Pittman (who testified for the state) to plead guilty to the reduced charge of manslaughter. In Culberson, co-indictee Pittman participated in the planning and carrying out of the robbery, but here co-indictee White had a much lesser part in the crime. The record fails to support the argument that the district attorney abused his discretion in applying Mississippi's capital murder statute, and we find his action was in keeping with established law. The United States Supreme Court has recognized the exercise of prosecutorial discretion within constitutional limits. Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). That prosecutors must have wide latitude in the exercise of their prosecutorial discretion is now accepted and well established in this jurisdiction. As we held in Boyington v. State, 389 So.2d 485 (Miss. 1980),
[P]lea bargaining is an essential part of the criminal justice system. Salter v. State, 387 So.2d 81, Nos. 51,773 and 51,786, handed down July 30, 1980 [Not yet reported]; Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).
Id. at 490.
We are unwilling to reverse the defendant's conviction because his co-indictee was allowed to plead guilty to a charge of simple murder as a result of the discretionary judgment of the district attorney who was in charge of the prosecution.
The eighth and last defense argument asserted is that he was "denied sixth amendment rights to effective assistance of counsel." In effect, defense counsel is charging himself with ineffectively representing his client, the defendant Edwards. The argument is based on the following statements made by defense counsel during his argument to the jury on the guilt phase:
BY MR. STANFIELD: And yet he made deal. Mr. Peters [meaning the State] made a date with death and had to marry the devil to do it and he's been sleeping with the devil ever since that man [meaning Mikel L. White] pled guilty on January the 12th of this year.
BY MR. PETERS: I move that Mr. Stanfield be held in contempt of court, that he be admonished for violating the rules of law with regard to attacking other attorneys, that he has gone outside of the record and that the jury be instructed that this lawyer has no ethics when it comes to a trial, Your Honor.
BY THE COURT: Mr. Stanfield, do not attack the personal integrity of the opposing counsel and the jury will disregard the last part of the arguments. You may argue your point but in a different fashion.
* * * * * *
BY MR. STANFIELD: I just simply stand in awe when he objects because it frightens me.
BY MR. PETERS: [N]ow look, there's only so much, Your Honor, than an unethical lawyer can expect another lawyer to take before he decides he's going to go ahead and have a confrontation personally.
BY THE COURT: Mr. Stanfield, I have reprimanded you twice in that regard. Now, let's stay out of personalities. Let's move along.
And the argument is based on District Attorney Peters' statement during closing argument on the guilt phase.
BY MR. PETERS: We have not tried to mislead you. We have not tried to make remarks about people that are uncalled for and we have tried to stick to the issues. But, for some reason, defendants [sic] feel that that's not enough. They [sic] don't want you to know the truth. They [sic] don't want you to 
BY MR. STANFIELD: (Interposing) Your Honor, he's doing the same thing that he hollered to high heaven about me and you made me stop.
BY THE COURT: Yes, sir, and I'll make him stop too, Mr. Stanfield.
*1013 Defense counsel argues that after receiving two reprimands from the trial court, he became wholly ineffective for the remainder of the trial and also alienated the jury against the appellant. It is also argued that the district attorney's remarks, "But for some reason, defendants feel that that's not enough. They don't want you to know the truth" was a direct comment upon the failure of the appellant to testify.
We note that the trial court upheld defense counsel's objection to the district attorney's remarks and we find that this establishes that the circuit judge was judiciously fair in presiding over the final stage (jury argument) of the trial. Both the prosecutor and defense counsel merited the admonishment of the trial judge to "stay within the facts."
When the trial court was confronted with the defense counsel's assertion that the district attorney had been "sleeping with the devil" by accepting a guilty plea from co-indictee White, he correctly admonished defense counsel not to "attack the personal integrity of opposing counsel." We think the trial judge demonstrated much judicial statesmanship and fairness to both sides in the way he presided throughout the trial. Upon the entire record, we think the defendant received effective assistance of counsel and in no way was his trial "offensive to the common and fundamental ideas of fairness and right." Hutchinson v. State, 391 So.2d 637 (Miss. 1980).
Presented by the record before us is testimony, which the jury had a right to accept, that the defendant committed the brutal killing while engaged in the offense of robbery. He told his co-indictee that he "shot the sucker" so that he (the defendant) could not be identified by his victim. A more calloused and unjustifiable killing could hardly be imagined.
We have carefully reviewed the record and compared it with all our decisions upholding death penalties subsequent to Jackson v. State, 337 So.2d 1242 (Miss. 1976).[2] Testimony presented at the sentencing phase of the trial establishes that the defendant had a long record of criminal convictions and had been previously sentenced as an habitual criminal. During the time of the offense in question, the defendant was an escapee from prison. He had also received a life sentence for capital murder for a murder which was committed during the same week as the offense in question. Upon analysis of the testimony here and its comparison to each of the other cases wherein we have affirmed the death penalty, we must conclude that the death penalty here is not excessive in the light of the aggravating and mitigating circumstances. Execution of Edwards will not be wanton or freakish, but consistent and evenhanded with all the post-Jackson death penalty cases previously affirmed by us.
Considered in its entirety, the record shows that the defendant was vigorously and astutely represented by court appointed counsel. A fair trial was accorded the defendant. The verdict and sentence were based upon evidence which established his guilt beyond a reasonable doubt. Accordingly, affirmance is ordered, and the 2nd day of June, 1982 is fixed as the date on which the death sentence shall be executed as provided by law.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and DARDEN, JJ., concur.
NOTES
[1] Edwards' capital murder conviction and life imprisonment sentence for a separate murder were affirmed in Edwards v. State, 407 So.2d 102 (Miss. 1981).
[2] For a listing of the felony murder death penalty cases affirmed by this Court see Bullock v. State, 391 So.2d 601 (Miss. 1980) (affirming sentence of death for felony murder) at page 612.