535 So.2d 1354 (1988)
Chandler CLEMONS
v.
STATE of Mississippi.
No. DP-83.
Supreme Court of Mississippi.
November 30, 1988.
Rehearing Denied December 21, 1988.
*1355 Eugene A. Perrier and Travis T. Vance, Jr., Vicksburg, for appellant.
Mike Moore, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Donald G. Barlow, Sp. Asst. Atty. Gen., Jackson, and Frank Campbell, Dist. Atty., Vicksburg, for appellee.
En Banc.
ROY NOBLE LEE, Chief Justice, for the Court:
Chandler Clemons was indicted May 12, 1987, in the Circuit Court of Warren County for the capital robbery/murder of Arthur Shorter, a pizza delivery man. The lower court granted Clemons' motion to change venue and it was changed to Harrison County, Mississippi, where the trial began on July 20, 1987. At the conclusion of the guilt phase, the jury returned a guilty verdict of capital murder and, after the sentencing hearing, on a bifurcated trial, the jury imposed the death penalty upon Clemons. The case now comes to this *1356 Court on appeal and Clemons has assigned six (6) errors in the trial below.

Facts
The principal witness in this case was Anthony Calvin, a 17-year-old youth, who was indicted along with appellant Chandler Clemons and Antonio Hay. Appellant, Clemons, testified in his own behalf. The prosecution entered into an agreement with Anthony Calvin when he expressed his willingness to testify for the State. The facts most favorable to the State follow.
On April 17, 1987, Anthony Calvin, while at the Big Star Grocery in Vicksburg with his mother, met a friend, Darwin Hunter. They attempted to contact several other friends in person and by telephone and, about 5 p.m., they picked up Clemons at his home and went to Antonio Hay's home, where they picked up Hay. When Hay joined them, he was carrying a sawed-off shotgun in his jacket and he put the gun under the front seat of the automobile.
Clemons, Hay and Calvin eventually wound up at the home of Gary Hubbard, where Clemons said he needed money and suggested he could get some money by robbing a pizza delivery man. Hay, Hubbard and Clemons discussed the plan and Hay made a call from a pay telephone to Domino's Pizza, ordered a pizza and told the shop to send change for fifty dollars ($50.00). He asked that the pizza be delivered to Lover's Lane, and was informed that the store didn't deliver that far away.
Eventually, Gary Hubbard and Darwin Hunter, who had been picked up by them, were dropped off at a party. Clemons then made a second call from a pay telephone at the Big Star Grocery to Domino's Pizza. He ordered the pizza to be delivered to Woodglen Apartments, # 56. Clemons, Hay, and Calvin went to the Woodglen Apartment complex and parked the car facing the driveway into the complex. Hay and Clemons got out of the car, Clemons taking the shotgun and Hay taking a stick. Calvin stayed in the car. They could see the pizza delivery vehicle approaching and, when it went up the hill, either Clemons or Hay called Calvin to drive their car down the hill. The pizza delivery vehicle went all the way up to the complex and started back down the hill past the car which Calvin had, by that time, apparently parked part of the way down the hill. Hay came out of the bushes and got in the car with Calvin. Clemons was at the bottom of the hill where he stopped the pizza delivery vehicle, got into it and returned up the drive where Hay and Calvin were waiting in the parked car. Clemons, with the gun in his hand, told Arthur Shorter, the pizza delivery man, to get out of the vehicle and told him to "take out everything you have" and to take all his money out of his pockets. At that time, either Clemons or Hay threw the keys to the pizza delivery vehicle into the bushes. Clemons ordered Shorter to lie down, which Shorter did. Clemons took the bag of money and some pizzas from the delivery vehicle. As he started on his way back to the car in which Calvin was sitting, Hay asked Clemons if Shorter had seen his face. Clemons replied in the affirmative. Hay then said, "Chandler, you got to blow his head off because he can identify you." Shorter begged Clemons not to shoot him. Clemons told Hay to pull their car farther down the hill, which he did. Clemons shot Shorter and got into the car with Hay and Calvin and they started down the hill. Calvin looked back and saw Shorter raise his head once.
The physical facts indicate that death for Shorter was not instantaneous; that after being shot, he dragged himself to his vehicle and attempted to get into it; and that, having no keys with which to start the vehicle, he began making his way toward the apartment complex. After going some distance, he collapsed and died sometime later.
Clemons, Hay and Calvin went back to the party where they had dropped off Hunter and Hubbard, ate some of the stolen pizza and divided the money from the robbery, which totaled four or five dollars. They left the party after a short while, and Calvin went home to sleep. About 2 a.m., Calvin woke up and learned that one Charles Bracey, a Warren County jailer, was at Calvin's home visiting Calvin's sister. *1357 Calvin described to Bracey the events surrounding the killing of Arthur Shorter.
On the night of the murder, Clemons disposed of the gun in a hole behind his house. Clemons then went to sleep and the next morning got up and went fishing. By that time, the sheriff had the account of the robbery and homicide and went to Clemons' home. On Clemons' return from fishing, he called the sheriff who went there and arrested him in the late afternoon of April 18. Clemons made a videotaped statement which was consistent with his trial testimony. He admitted being a member of the group, but he denied prior knowledge of the plan to rob the pizza delivery man and denied killing Shorter. After his statement, but before trial, Clemons told the sheriff where the gun was located.

PART I

Guilt Phase

THE VERDICT OF THE JURY AND SENTENCE OF DEATH IS VIOLATIVE OF APPELLANT'S RIGHTS AND IS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE IN VIEW OF THE FACT THAT THE CO-INDICTEE, ANTHONY CALVIN, WAS THE ONLY WITNESS FOR THE STATE TESTIFYING TO THE ACTUAL CRIME CHARGED AND WAS GIVEN IMMUNITY FROM THE DEATH SENTENCE IN A LIMITED PLEA BARGAIN AGREEMENT WITH THE STATE OF MISSISSIPPI.
Clemons contends that the jury found him guilty, relying solely on the testimony of Anthony Calvin, a co-indictee, whose testimony was unbelievable, since Calvin entered into an agreement with the State.[1] He contends that the State's agreement with Calvin should be treated differently from plea bargain agreements because the agreement (1) "allowed Anthony Calvin to save his own life at the expense of the life of Chandler Clemons," and (2) "`proved' to the jury that Clemons was guilty."
The memorandum of agreement between Calvin and the State was before the jury and defense counsel, on cross-examination, used the agreement to attack Calvin's credibility. In Culberson v. State, 379 So.2d 499 (Miss. 1979), a death penalty case, a participant in the crime testified for the State. His testimony was the sole evidence that the defendant Culberson fired the fatal shot. This Court said:
The proof in this case shows that Pittman and Culberson conspired to commit robbery and participated in the attempted robbery of decedent with Culberson firing the fatal shot. It was established by other witnesses that there were two assailants. Pittman, one of the participants in the crime, turned state's evidence, and his testimony was the sole evidence that Culberson fired the fatal shot.
This case involves prosecutorial discretion which was necessary. Without the testimony of Pittman, there was no evidence to place Culberson at the scene of the crime and to show that he fired the fatal shot. We recognize the great disparity between the sentences of Pittman and Culberson, but if the state is not permitted to exercise prosecutorial discretion in order to obtain the testimony of a participant in a capital murder by permitting the one furnishing the testimony to plead guilty to a lesser crime, crimes such as the one in this case would not be solved and all participants would go free. When two or more persons commit a crime and cannot be identified except by one of the participants, the state must be allowed some discretion in securing the testimony of one of the participants in order to solve the crime.
To hold otherwise would be tantamount to holding: (1) the testimony of an accomplice in a capital murder case is sufficient to sustain a conviction in the guilty [sic] phase of the trial, but is not *1358 sufficient to sustain the death penalty in the sentencing phase. (2) If an accomplice who testifies for the state in a death penalty case is not given the death penalty, the trigger man may not be given the death penalty. Such result is not required by our statutes, the decisions of the United States Supreme Court, or our decisions.
We hold prosecutorial discretion was not abused because Pittman, who did not fire the fatal shot, was permitted to plead guilty to manslaughter, while Culberson, the one who fired the fatal shot, was given the death penalty. We hold the death penalty was not applied capriciously in this case. It is a proper sentence of the senseless and unprovoked murder committed by Culberson, who, after first knocking the victim down with a table leg, then shot the victim while he was lying on the ground begging, "Help me, help me."
379 So.2d at 510.
The testimony of a co-indictee or a co-conspirator, if not improbable, or materially self-contradictory, or thoroughly impeached, is sufficient to sustain a conviction. In Fairchild v. State, 459 So.2d 793 (Miss. 1984), the Court, addressing the question, said:
To be sure, the evidence which produced the conviction from which Fairchild here appeals was provided by his co-indictee and accomplice, Timothy Lee Dickson. We have repeatedly recognized that a defendant may be lawfully convicted on the uncorroborated testimony of an accomplice. Gandy v. State, 438 So.2d 279, 285 (Miss. 1983); Jones v. State, 381 So.2d 983, 988 (Miss. 1980); Culberson v. State, 379 So.2d 499 (Miss. 1979), although we frequently caution that such testimony should be viewed with suspicion and must be reasonable and not improbable, self-contradictory, or substantially impeached. Mason v. State, 429 So.2d 569, 571 (Miss. 1983); Catchings v. State, 394 So.2d 869, 870 (Miss. 1981).
Fairchild, 459 So.2d at 797.
The principle is elementary that questions of fact are determined by the jury. Credibility of witnesses and the worth of their testimony is for the jury. Harris v. State, 532 So.2d 602 (Miss. 1988); Smith v. State, 463 So.2d 1102, 1103 (Miss. 1985). In the present case, the question of Clemons' guilt was an issue of fact to be determined by the jury. That issue was resolved against Clemons and the evidence supports the guilty verdict. Williams v. State, 445 So.2d 798, 811 (Miss. 1984); Pearson v. State, 428 So.2d 1361 (Miss. 1983).
The assigned Error I is denied.

PART II

Sentencing Phase

(1)

THE SENTENCE OF DEATH IS VIOLATIVE OF APPELLANT'S RIGHTS AND IS AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE EVIDENCE IN VIEW OF THE FACT THAT THE CO-INDICTEE, ANTHONY CALVIN, WAS THE ONLY WITNESS FOR THE STATE TESTIFYING TO THE ACTUAL CRIME CHARGED AND WAS GIVEN IMMUNITY FROM THE DEATH SENTENCE IN A LIMITED PLEA BARGAIN AGREEMENT WITH THE STATE OF MISSISSIPPI.

(4)

THE DEATH SENTENCE WAS IMPOSED UNDER THE INFLUENCE OF PASSION AND PREJUDICE AGAINST CHANDLER CLEMONS.
The assigned Error (1) applies to the guilt phase and the sentencing phase, and it is before the Court now in the sentencing phase. Assigned Errors (1) and (4) will be considered together.
Clemons makes the same argument here that he made in the guilt phase: i.e., that the jury must believe one witness to the exclusion of another, or that the jury must believe all of a witness's statements, if it believes any of them. This Court is not required to determine how juries evaluate the testimony before them. In Johnson *1359 v. State, 477 So.2d 196, 207 (Miss. 1985), the Court said:
This Court has long held, as stated in Cochran v. State, 278 So.2d 451 (Miss. 1973), citing Wilson v. State, 264 So.2d 828 (Miss. 1972):
In a criminal prosecution, the jury may accept testimony of some witnesses and reject that of others, it may accept in part and reject in part the testimony of any witness, or it may believe part of the evidence on behalf of the State and part of that for the accused. In other words, the credibility of witnesses is not for the reviewing court. Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964).
It was the function of the jury to pass upon the credibility of the witnesses and to resolve the issues. Since there was ample evidence, which if believed by the jury, justified the verdict, the verdict will not be disturbed on appeal. Murphree v. State, 228 So.2d 599 (Miss. 1969) (264 So.2d at 830) [Other citations omitted]

See also: Dickerson v. State, 441 So.2d 536 (Miss. 1983) at 583, citing Gandy v. State, 438 So.2d 279, 285 (Miss. 1983); Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983); and Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980).
477 So.2d at 207.
Assignments (1) and (4) are denied.

(2)

THE COURT ERRED IN NOT GRANTING THE APPELLANT'S INSTRUCTION D-K AT THE SENTENCING PHASE OF THE TRIAL. THE APPELLANT WAS ENTITLED TO AN INSTRUCTION WHICH SET FORTH ALL ALLEGED MITIGATING FACTORS.
Clemons' contention here is that he was entitled to an instruction on mitigating circumstances which personalized the statutory mitigating circumstances by the use of his name and the actual facts of the case, i.e., that the jury should consider that Clemons was only eighteen (18) as opposed to the instruction that the jury could consider "the age of the defendant." He cites no authority for this proposition.
Clemons also claims that the instruction which listed all of the statutory mitigating circumstances as well as a general provision that the jury could consider as a mitigating factor any other circumstances which had been put before them, did not follow the intent and purpose of the law. A comparison of the instruction which was given with the one which was requested by Clemons reveals that the defendant's refused instruction for the most part tracked the statutory language but changed "defendant" to "Chandler Clemons." The defense instruction which was denied included three (3) circumstances which are not enumerated in the statute:
(a) "Chandler Clemons has an extremely low intelligence quotient."
The expert testimony before the jury reflected that Clemons was a person of average intelligence. His overall IQ score of 92 on the Wechsler Adult Intelligence Scale places him in the lower half of the average group. That part of the instruction sought was not warranted by the evidence. An instruction should not be granted if there is no evidentiary basis for the instruction in the record. Neal v. State, 451 So.2d 743, 761 (Miss. 1984), citing Johnson v. State, 416 So.2d 383, 388 (Miss. 1982); Dunaway v. State, 157 Miss. 615, 617, 128 So. 770 (1930).
(b) "Chandler Clemons has expressed remorse for his involvement in the offense."
The remorse of Clemons was placed before the jury in the following colloquy had on direct examination:
Q. Are you sorry about what happened to Arthur Shorter?
A. Yes, sir. I guess I was in the wrong place at the wrong time. I wish something like this had never ever happened.
Q. Do you feel remorse for the death of Arthur Shorter?
A. Yes, sir. So many times I often cry at night in my cells [sic]. I can't even go to sleep.
(c) "Chandler Clemons turned himself in to the police."
*1360 As stated in the facts, on the day of the homicide, the sheriff went to Clemons' home, found that he had gone fishing, and left a card with his phone number. When Clemons returned home, he telephoned the sheriff who returned to the Clemons home and arrested him.
In addition to six specific statutory mitigating circumstances, which included all but the three above-listed circumstances, requested by the defendant, the instructions which were given to the jury included a general provision which allowed the jury to consider:
any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the defendant.
The lower court did not exclude evidence of any of the mitigating factors upon which the defendant sought instruction; but declined to particularize the instructions to the extent that the defendant wished. The lower court also gave two other instructions which made clear that the jury should consider any matter which the jury deemed to be mitigating:
The Court instructs the Jury that you must consider any evidence of mitigating circumstances. However, you cannot consider any aggravating factors not specifically mentioned. If you have a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, you are obliged to resolve that doubt in favor of Chandler Clemons.
* * * * * *
The Court instructs the Jury that although this Court has in other instructions listing [sic] specific mitigating circumstances which you are to determine in determining whether or not Chandler Clemons suffers the death penalty or should be sentenced to life imprisonment, you may consider other proof adduced by the Defendant which is mitigating in nature and which you feel is worthy of your consideration in determining whether or not the Defendant should be sentenced to death or given life imprisonment.
It is elementary that the trial court is not required to instruct the jury in the exact language requested by a defendant. An instruction which instructs the jury on the law, according to the facts, is sufficient and a duplicate instruction in different words, requested by the defendant, is not required. Calhoun v. State, 526 So.2d 531, 533 (Miss. 1988); Laney v. State, 486 So.2d 1242, 1246 (Miss. 1986); Billiot v. State, 454 So.2d 445, 461 (Miss. 1984).
The assigned Error (2) is denied.

(3)

THE APPELLANT WAS ENTITLED TO A MERCY INSTRUCTION IN THIS CASE BECAUSE THE STATE HAD ALREADY GRANTED MERCY TO A CO-APPELLANT, AND IT WAS REVERSIBLE ERROR FOR THE LOWER COURT TO REFUSE DEFENSE INSTRUCTION D-Y AT THE SENTENCING PHASE OF THE TRIAL.
Although Clemons concedes that this Court has not held that the refusal of a mercy instruction constitutes reversible error, he contends here that the denial of his requested mercy instruction constitutes reversible error. He cites no authority for this proposition.
The following instruction was requested by Clemons but denied by the Court:
Even if you find one, or more, aggravating circumstances, and you find that the aggravating circumstances, [sic] or circumstances, outweigh the mitigating circumstances, you may still conclude that the circumstances are insufficient to warrant the death penalty, and you may recommend mercy and sentence Chandler Clemons to life imprisonment.
You are not required to find any mitigating circumstances in order to make a recommendation of mercy that is binding on the trial court.
The lower court granted two instructions which, although not in the exact verbiage of the above instruction, presented the sense of the Clemons instruction to the jury. They follow:

*1361 The Court instructs the Jury that even if you find there are no mitigating circumstances in this case which are worthy of your consideration, you may still sentence Chandler Clemons to life imprisonment.
The Court instructs the Jury that you need not find any mitigating circumstances in order to return a sentence of life imprisonment.
In Nixon v. State, 533 So.2d 1078 (Miss. 1987), this Court addressed the exact question raised by Clemons here. The Court held that the second of the above instructions was effective as a mercy instruction. The Court stated:
Was Nixon entitled to a "mercy" instruction?
Conceding his argument has been previously rejected by this Court, Nixon contends he was entitled to a jury instruction informing the jury of its option to recommend a life sentence, even where the aggravating circumstances outweighed the mitigating circumstances. Identical arguments were rejected by this Court in Wiley v. State, 484 So.2d 339 (Miss. 1986); Johnson v. State, 477 So.2d 196 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985); Jordan v. State, 464 So.2d 475 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1985); Hill v. State, 432 So.2d 427 (Miss. 1983).
Nixon's complaint stems from the trial court's refusal of jury instruction D-13 which the trial judge held was redundant with instruction D-3. Jury instruction D-3 read, "The Court instructs the jury that you need not find any mitigating circumstances in order to return a sentence of life imprisonment."
Clearly Nixon was in fact afforded a mercy instruction which gives Nixon no basis upon which to complain.
533 So.2d at 1100.
The assigned Error (3) is denied.

(5)

THE EVIDENCE DOES NOT SUPPORT THE JURY'S FINDING OF AGGRAVATING CIRCUMSTANCES.
The State was granted a jury instruction on two aggravating circumstances as follows:
Consider only the following elements, if any, of aggravation in determining whether the death penalty should be imposed: (1) the Capital Offense was committed while the Defendant was engaged in the commission of Robbery and was committed for pecuniary gain; (2) the Capital Offense was especially heinous, atrocious, or cruel.
Clemons argues that the State did not introduce sufficient evidence of aggravating circumstances to outweigh the mitigating circumstances presented by him, and that the jury failed to consider any of the mitigating factors. The jury was specifically instructed on six (6) mitigating factors and one (1) general factor which covered anything mitigating that might come to the jury's mind. Appellate courts assume that juries follow the instructions. Johnson v. State, 475 So.2d 1136, 1142 (Miss. 1985); Payne v. State, 462 So.2d 902, 904 (Miss. 1984). The jury is the factfinder and, in the present case, found that the aggravating circumstances outweighed the mitigating circumstances presented by Clemons. This Court is bound by that finding of the jury. Wash v. State, 521 So.2d 890, 896 (Miss. 1988); Dixon v. State, 519 So.2d 1226, 1228 (Miss. 1988); McFee v. State, 511 So.2d 130, 133 (Miss. 1987).
The assigned Error (5) is denied.

PART III

STATUTORY REVIEW OF SENTENCING

A.

THE MAYNARD v. CARTWRIGHT QUESTION
Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), relates to the "especially heinous, atrocious, or cruel" aggravating circumstance in a capital (death penalty) case. In the present case, the lower court instructed the jury that it could consider two (2) aggravating circumstances, i.e. (1) the capital *1362 offense was committed while the defendant was engaged in the commission of robbery and was committed for pecuniary gain, and (2) the capital offense was "especially heinous, atrocious, or cruel." The jury found that those aggravating circumstances were supported by the evidence and were sufficient to impose the death penalty and that there were insufficient mitigating circumstances to outweigh the aggravating circumstances. The appellant offered no objection to the aggravating circumstance "especially heinous, atrocious, or cruel" and he has not assigned as error the granting of that instruction. Therefore, the question should be procedurally barred here.
However, in the light of Maynard v. Cartwright, supra, and because of this Court's responsibility under Mississippi Code Annotated § 99-19-105 (Supp. 1988) for review of a death penalty case, we consider the Maynard v. Cartwright question.
In brief, Maynard, supra, authored by Mr. Justice White, held:
(1) the "especially heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague, as it did not offer sufficient guidance to the jury in deciding whether to impose the death penalty; (2) the presence of another, unchallenged, aggravating circumstance did not sustain the death sentence where Oklahoma had no procedure for attempting to save a death penalty when one of several aggravating circumstances was held to be invalid or unsupported by evidence; and (3) the effect of recent decisions of the Oklahoma Court of Criminal Appeals limiting the aggravating circumstance to cases in which torture or serious physical abuse was present was to be decided in the first instance by state courts.
108 S.Ct. at 1853.
The present case is distinguished from Maynard v. Cartwright, an Oklahoma case, in that Oklahoma had no procedure for addressing the correctness of a death penalty when one of several aggravating circumstances found by the jury was held to be invalid or unsupported by evidence. The Oklahoma Court simply vacated the death sentence and automatically imposed a sentence of life imprisonment. The United States Supreme Court said:
The State also insists that the death penalty should stand because the jury found two aggravating circumstances, one of which was unchallenged and is sufficient to sustain the sentence. When this case was decided, however, the Oklahoma Court of Criminal Appeals would not attempt to save the death penalty when one of several aggravating circumstances found by the jury was found invalid or unsupported by the evidence. As the Tenth Circuit said, there was "no provision for curing on appeal a sentencer's consideration of an invalid aggravating circumstance." Id., at 1482. If this was the case at that time, and the State does not dispute it, the Court of Appeals cannot be faulted for not itself undertaking what the state courts themselves refused to do.
108 S.Ct. at 1860.
Unlike Oklahoma, this Court (Mississippi) has held and established unequivocally through the years that when one aggravating circumstance is found to be invalid or unsupported by the evidence, a remaining valid aggravating circumstance will nonetheless support the death penalty verdict. Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). See Mississippi cases: Edwards v. Scroggy, 849 F.2d 204 (5th Cir.1988); Evans v. Thigpen, 809 F.2d 239 (5th Cir.1987); Nixon v. State, 533 So.2d 1078 (Miss. 1987); Lockett v. State, 517 So.2d 1346, 1355 (Miss. 1987); Lockett v. State, 517 So.2d 1317, 1336 (Miss. 1987); Faraga v. State, 514 So.2d 295, 309 (Miss. 1987); Johnson v. State, 511 So.2d 1333, 1337 (Miss. 1987); Stringer v. State, 500 So.2d 928, 945 (Miss. 1986); Irving v. State, 498 So.2d 305, 314 (Miss. 1986); Wiley v. State, 484 So.2d 339, 351-52 (Miss. 1986); Edwards v. State, 441 So.2d 84, 92 (Miss. 1983); Tokman v. State, 435 So.2d 664, 670 (Miss. 1983); Evans v. State, 422 So.2d 737, 743 (Miss. 1982).
In the Mississippi case of Edwards v. Scroggy, the erroneous admission of a misdemeanor *1363 conviction in the sentencing phase was before the Fifth Circuit Court of Appeals. The Court said:
Considering the extent of Edwards' criminal record, it is inconceivable that the erroneously admitted misdemeanor conviction of carrying a concealed weapon affected the jury's decision.
... Assuming that the misdemeanor conviction of carrying a concealed weapon is necessary to support the jury's finding of this aggravating circumstance, appellant's argument nevertheless must fail. The Court in Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), held that the invalidation of one aggravating circumstance did not require the vacation of the death penalty so long as there were other valid aggravating circumstances remaining. [Footnote omitted]. The jury in this case found six aggravating circumstances and the invalidation of one of them would not require vacation of the death sentence. See Rault v. Butler, 826 F.2d [299] (5th Cir.1987); cert. denied, ___ U.S. ___, 108 S.Ct. 14, 97 L.Ed.2d 803 (1987); Celestine v. Butler, 823 F.2d 74 (5th Cir. 1987); Evans v. Thigpen, 809 F.2d 239 (5th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 3278, 97 L.Ed.2d 782 (1987). The district court correctly rejected this claim.
849 F.2d 204, 211 (5th Cir.1988).
In a footnote to the above-quoted passage, the Fifth Circuit commented on as follows:

Maynard v. Cartwright, ___ U.S. ___, 108 S.Ct. 1853, 99 L.Ed.2d [372] (1988), just decided by the Supreme Court does not undermine this conclusion. In Maynard, the petitioner was sentenced to death following a finding by an Oklahoma jury of two statutory aggravating circumstances: "an especially heinous, atrocious or cruel" murder and the defendant "knowingly created a great risk of death to more than one person." The Supreme Court determined that the first aggravating circumstance was invalid; the second remained unchallenged. The Court, however, instead of reinstating the death penalty, approved a remand of the case to the Oklahoma Court of Criminal Appeals. But the opinion makes it clear that the Court approved this remand because Oklahoma law was unclear on whether the sentence of death should be set aside if one of the aggravating circumstances was found invalid and others remained unchallenged. Consequently, the case was remanded to the Oklahoma court to determine as a matter of state law whether the sentence should be set aside. Unlike Oklahoma law, however, Mississippi law is clear that one invalid aggravating circumstance will not suffice to overturn a death penalty where other valid aggravating circumstances remain. Edwards v. State, 441 So.2d 84, 89, 92 (Miss. 1983).
849 F.2d at 211, n. 7 (5th Cir.1988).
The United States Supreme Court in Maynard v. Cartwright held that the "especially heinous, atrocious or cruel" aggravating circumstance left the jury with unchanneled discretion and that the Oklahoma court had never adopted a limiting construction of "especially heinous, atrocious or cruel." Not so in Mississippi. This Court has placed a limiting construction on "especially heinous, atrocious or cruel." In Coleman v. State, 378 So.2d 640 (Miss. 1979), the Mississippi Court adopted the construction found in Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), which held:
What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim. 578 F.2d at 611. (Emphasis added) [Emphasis the Court's].
378 So.2d at 648. See Jordan v. State, 464 So.2d 475, 478 (Miss. 1985).
In Evans v. State, 422 So.2d 737 (Miss. 1982), this Court applied a limiting construction of "especially heinous, atrocious or cruel" holding that those cases in which "mental torture and aggravation" were inflicted on the victim the same may also be *1364 considered as applying to that aggravating circumstance. In Maynard v. Cartwright, the U.S. Supreme Court said:
We also do not hold that some kind of torture or serious physical abuse is the only limiting construction of the heinous, atrocious, or cruel aggravating circumstance that would be constitutionally acceptable.
___ U.S. at ___, 108 S.Ct. at 1859-60, 100 L.Ed.2d at 382.
In the case sub judice, the lower court gave seven (7) instructions to the jury, which singly and collectively told the jury that regardless of aggravating circumstances, they were not required to impose the death penalty; that, if the jury found there were no mitigating circumstances, the jury still was not required to inflict the death penalty. Examples of those instructions follow:
1230, 1231, 1235, 1238, 1242
The Court instructs the Jury that although this Court has in other instructions listing [sic] specific mitigating circumstances which you are to consider in determining whether or not Chandler Clemons suffers the death penalty or should be sentenced to life imprisonment, you may consider other proof adduced by the Defendant which is mitigating in nature and which you feel is worthy of your consideration in determining whether or not the Defendant should be sentenced to death or given life imprisonment.
* * * * * *
The Court instructs the Jury that even if you find there are no mitigating circumstances in this case which are worthy of your consideration, you may still sentence Chandler Clemons to life imprisonment.
* * * * * *
The Court instructs the Jury that you need not find any mitigating circumstances in order to return a sentence of life imprisonment.
* * * * * *
The Court instructs the Jury that even though you have convicted Chandler Clemons of capital murder, that conviction alone is insufficient to warrant you returning a penalty of death unless you find beyond a reasonable doubt that any one or more of the aggravating circumstances listed in other instructions given to you by the Court exist and that they outweigh any mitigating circumstances.
* * * * * *
The Court instructs the Jury that you must consider any evidence of mitigating circumstances. However, you cannot consider any aggravating factors not specifically mentioned. If you have a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances, you are obliged to resolve that doubt in favor of Chandler Clemons.
Considering that this Court has placed a limiting construction on the aggravating circumstance of "especially heinous, atrocious or cruel;" that Mississippi law holds one invalid aggravating circumstance will not suffice to overturn a death penalty where one or more valid aggravating circumstance(s) remains; the brutal and torturous facts surrounding the murder of Arthur Shorter; and the narrowing instructions given to the jury by the lower court; it is inescapable that Maynard v. Cartwright does not dictate the outcome of the case sub judice. Further, as the Fifth Circuit Court of Appeals said in Edwards v. Scroggy, supra:
Considering the extent of Edwards' criminal record, it is inconceivable that the erroneously admitted misdemeanor conviction of carrying a concealed weapon affected the jury's decision.
We likewise are of the opinion beyond a reasonable doubt that the jury's verdict would have been the same with or without the "especially heinous, atrocious or cruel" aggravating circumstance.

B.

FURTHER REVIEW
In accordance with Mississippi Code Annotated § 99-19-105(3)(a), (b), (c), and (5) (Supp. 1988) and the decisions of this Court and the federal courts on imposition of the *1365 death penalty, we have reviewed further the record in this case and have compared it and the death sentence imposed in the cases decided by this Court since Jackson v. State, 337 So.2d 1242 (Miss. 1976), which cases are set forth in Appendix A.
In our opinion, after a review of those cases coming before this Court, and comparing them to the present case, the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other, and the death penalty will not wantonly or freakishly be imposed in this case.
From our independent review, we further find and conclude that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor, and that the sentence of death is not excessive or disproportionate to the penalty imposed in those cases since 1976, considering both the crime and the manner in which it was committed and the defendant; that the death penalty imposed on Clemons is consistent and evenhanded to like and similar cases; and that the sentencing phase followed in his trial provided a meaningful basis for distinguishing the few cases in which the death penalty is imposed and the many cases in which it is not imposed.
The judgment of the lower court is affirmed and Wednesday, January 4, 1989, is set for the execution of the sentence by the infliction of the death penalty in the manner provided by law.
AFFIRMED. WEDNESDAY, JANUARY 4, 1989, SET FOR EXECUTION OF THE DEATH PENALTY IN THE MANNER PROVIDED BY LAW.
DAN M. LEE, P.J., and SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON and PRATHER, JJ., dissent to Part III(A), joined by HAWKINS, P.J., as to reversal only.

APPENDIX "A"
Death Cases Affirmed by this Court:
Woodward v. State, 533 So.2d 418 (Miss. 1988)
Nixon, Sr. v. State, 533 So.2d 1078 (Miss. 1987)
Williams v. State, No. DP-56 (Miss. October 7, 1987)
Lockett v. State, 517 So.2d 1317 (Miss. 1987)
Lockett v. State, 517 So.2d 1346 (Miss. 1987)
Faraga v. State, 514 So.2d 295 (Miss. 1987)
Cole v. State, 525 So.2d 365 (Miss. 1987)
Jones v. State, 517 So.2d 1295 (Miss. 1987)
Wiley v. State, 484 So.2d 339 (Miss. 1986)
Johnson v. State, 477 So.2d 196 (Miss. 1985)
Gray v. State, 472 So.2d 409 (Miss. 1985)
Cabello v. State, 471 So.2d 332 (Miss. 1985)
Jordan v. State, 464 So.2d 475 (Miss. 1985)
Wilcher v. State, 455 So.2d 727 (Miss. 1984)
Billiot v. State, 454 So.2d 445 (Miss. 1984)
Stringer v. State, 454 So.2d 468 (Miss. 1984)
Dufour v. State, 453 So.2d 337 (Miss. 1984)
Neal v. State, 451 So.2d 743 (Miss. 1984)
Booker v. State, 449 So.2d 209 (Miss. 1984)
Wilcher v. State, 448 So.2d 927 (Miss. 1984)
Caldwell v. State, 443 So.2d 806 (Miss. 1983)
Irving v. State, 441 So.2d 846 (Miss. 1983)
Tokman v. State, 435 So.2d 664 (Miss. 1983)
Leatherwood v. State, 435 So.2d 645 (Miss. 1983)
Hill v. State, 432 So.2d 427 (Miss. 1983)
Pruett v. State, 431 So.2d 1101 (Miss. 1983)
*1366 Gilliard v. State, 428 So.2d 576 (Miss. 1983)
Evans v. State, 422 So.2d 737 (Miss. 1982)
King v. State, 421 So.2d 1009 (Miss. 1982)
Wheat v. State, 420 So.2d 229 (Miss. 1982)
Smith v. State, 419 So.2d 563 (Miss. 1982)
Johnson v. State, 416 So.2d 383 (Miss. 1982)
Edwards v. State, 413 So.2d 1007 (Miss. 1982)
Bullock v. State, 391 So.2d 601 (Miss. 1980)
Reddix v. State, 381 So.2d 999 (Miss. 1980)
Jones v. State, 381 So.2d 983 (Miss. 1980)
Culberson v. State, 379 So.2d 499 (Miss. 1979)
Gray v. State, 375 So.2d 994 (Miss. 1979)
Jordan v. State, 365 So.2d 1198 (Miss. 1978)
Voyles v. State, 362 So.2d 1236 (Miss. 1978)
Irving v. State, 361 So.2d 1360 (Miss. 1978)
Washington v. State, 361 So.2d 61 (Miss. 1978)
Bell v. State, 360 So.2d 1206 (Miss. 1978)

Death Cases Reversed as to Guilt Phase and Sentence Phase:
West v. State, 519 So.2d 418 (Miss. 1988)
Houston v. State, 531 So.2d 598 (Miss. 1988)
Davis v. State, 512 So.2d 1291 (Miss. 1987)
Williamson v. State, 512 So.2d 868 (Miss. 1987)
Smith v. State, 499 So.2d 750 (Miss. 1987)
West v. State, 485 So.2d 681 (Miss. 1985)
Fisher v. State, 481 So.2d 203 (Miss. 1985)
Johnson v. State, 476 So.2d 1195 (Miss. 1985)
Fuselier v. State, 468 So.2d 45 (Miss. 1985)
West v. State, 463 So.2d 1048 (Miss. 1985)
Jones v. State, 461 So.2d 686 (Miss. 1984)
Moffett v. State, 456 So.2d 714 (Miss. 1984)
Lanier v. State, 450 So.2d 69 (Miss. 1984)
Laney v. State, 421 So.2d 1216 (Miss. 1982)

Death Cases Reversed as to Punishment and Remanded for Resentencing to Life Imprisonment:
White v. State, 532 So.2d 1207 (Miss. 1988)
Edwards v. State, 441 So.2d 84 (Miss. 1983)
Dycus v. State, 440 So.2d 246 (Miss. 1983)
Coleman v. State, 378 So.2d 640 (Miss. 1979)

Death Cases Reversed as to Punishment and Remanded for a New Trial on Sentencing Phase Only:
Lanier v. State, 533 So.2d 473 (Miss. 1988)
Stringer v. State, 500 So.2d 928 (Miss. 1986)
Pinkton v. State, 481 So.2d 306 (Miss. 1985)
Mhoon v. State, 464 So.2d 77 (Miss. 1985)
Cannaday v. State, 455 So.2d 713 (Miss. 1984)
Wiley v. State, 449 So.2d 756 (Miss. 1984)
Williams v. State, 445 So.2d 798 (Miss. 1984)

Death Cases Remanded
Abram v. State, 523 So.2d 1018 (Miss. 1988)
HAWKINS, Presiding Justice, dissenting:
I join Justice Robertson's dissent insofar as he is of the view this case should be reversed.
Wittingly or not, the channeling of jury discretion by the U.S. Supreme Court may very well "channel" us out of the death penalty. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
In the sentencing phase of a capital murder trial, when the only question before the jury is to decide whether the murderer will *1367 be sentenced to death or to life imprisonment, I can think of no more important factor for the jury to consider than the circumstances surrounding the murder. Indeed, I do not know how the jury can escape thinking about how the victim was murdered.
Yet, we must now try and explain what "especially heinous, atrocious or cruel" mean with some specificity.
The jury should consider something of this nature, but trying to define it further is about like trying to define "beyond a reasonable doubt" further. These are plain words, not susceptible of plainer explanation, and their impact should be left for the jury to decide. Any attempt at delineation either dilutes or diverts their meaning.
What will the trial court be permitted to instruct the jury they may consider about this most important factor, the circumstance of the murder?
I wish the jury were permitted in each case to consider whether the murder indeed was "especially heinous, atrocious, or cruel." This is a serious question each juror should answer, and I do not think either of these words needs further refinement.
The U.S. Supreme Court having determined, however, in Maynard v. Cartwright, 486 U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), that these words do not constitute a valid factor in the jury's determination, I am compelled to vote to reverse. That Court having stated the jury should not have considered these words, only the trial jury  and certainly not this Court  could answer whether the absence of this factor from their consideration would have made a difference.
ROBERTSON, Justice, dissenting on sentencing phase only.

I.
I concur in affirmance of the judgment that Chandler Clemons stands convicted of the crime of capital murder and in what the Court has said en route. I regret that I cannot concur in Part III(A) regarding the sentencing phase. It seems there that the Court ignores elementary principles of legal reasoning. In my opinion, Maynard v. Cartwright, 486 U.S. ___, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) and, as well, the statutory directives of Miss. Code Ann. §§ 99-19-101(2) and (3) (1987), mandate a new trial on the matter of sentence.

II.
The Circuit Court submitted to the jury as a circumstance in aggravation that "the capital murder was especially heinous, atrocious or cruel." The jury found this aggravating circumstance in the exact language of the Court's instruction. The jury found a second aggravating circumstance, to-wit: that the capital murder was committed while the defendant was engaged in the commission of a robbery and was committed for pecuniary gain. The Cartwright error is that the phrase "especially heinous, atrocious or cruel" is unconstitutionally vague, so that a death sentence relying upon an aggravating circumstance so phrased may not stand.
Cartwright, on the authority of Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), holds that an Oklahoma statute, containing the exact words of our statute and the instruction here, failed to provide constitutionally adequate guidance for the jury's discretion in considering whether it should impose the death penalty. Cartwright, ___ U.S. ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 382. Cartwright holds that some further explanation and specification of the meaning of "especially heinous, atrocious or cruel" must be given the jury in cases where this aggravating circumstance is submitted. The Court stops short, however, of providing a model jury instruction on the point.
The Cartwright court places its holding in the mainstream of Eighth Amendment/death penalty jurisprudence going back to Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
Since Furman, our cases have insisted that the channeling and limiting of the sentencer's discretion in imposing the *1368 death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action.
___ U.S. ___, 108 S.Ct. at 1858, 100 L.Ed.2d at 380. From this general premise Cartwright holds "especially heinous, atrocious or cruel" void for vagueness, Eighth Amendment variety and vacates the death sentence predicated thereon.

III.

A.
If I understand it correctly, the majority reads Maynard v. Cartwright and recognizes that the Court is obligated to vacate the aggravating circumstance "The capital murder was especially heinous, atrocious or cruel."[1] I turn now to the various reasons why this is so, for the opinion is less than clear on the point.
The majority argues that we adopted a narrowed standard in Coleman v. State, 378 So.2d 640, 648 (Miss. 1979) and in Billiot v. State, 454 So.2d 445, 464-65 (Miss. 1984). Coleman elaborated upon "especially heinous, atrocious or cruel", suggesting that it refers to a "conscienceless or pitiless crime which is unnecessarily tortuous to the victim." 378 So.2d at 648. Billiot approved this elaboration. The problem here is that Clemons' sentencer, the jury, was not told of this elaboration.
Assuming arguendo the adequacy of Coleman-Billiot, what becomes critical is the portion of Cartwright which insists that such definition be given to the sentencing jury. Cartwright begins with the premise that all of the Eighth Amendment cases are concerned with "channeling and limiting of the sentencer's discretion." Cartwright, ___ U.S. ___, 108 S.Ct. at 1858, 100 L.Ed.2d at 380. Cartwright discusses Godfrey and notes that the vague language in Godfrey
was held to be insufficient to cure the jury's unchanneled discretion.
___ U.S. ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 381. The Court then holds that the case before it was "indistinguishable" from Godfrey
which failed to cure the unfettered discretion of the jury and satisfy the commands of the Eighth Amendment.
___ U.S. ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 382.
The narrowed Coleman version of "especially heinous, atrocious or cruel" was never communicated to the sentencing jury in Clemons' case. Billiot approves a limited construction of "especially heinous, atrocious or cruel", but no part of the Billiot holding was told to Clemons' jury. Wiley v. State, 484 So.2d 339, 353 (Miss. 1986) and Mhoon v. State, 464 So.2d 77, 85 (Miss. 1985) "recommended" that trial courts further define "especially heinous, atrocious and cruel" in light of Godfrey and Coleman, yet we have made it clear we won't reverse when they don't. See, e.g., Jones v. State, 517 So.2d 1295, 1301 (Miss. 1987); Faraga v. State, 514 So.2d 295, 309 (Miss. 1987).
Indeed, it may be fairly said that since Coleman we have consistently ignored its teachings, see, e.g., Jones v. State, 517 So.2d 1295, 1301 (Miss. 1987); Booker v. State, 449 So.2d 209, 220-21 (Miss. 1984).
Cartwright teaches that Coleman is not worth the paper it is written on if it isn't communicated to the sentencing jury  and it wasn't here.

B.
There is another would be escape hatch Cartwright closes off. I refer to the "we can fix it here" idea, the notion that, though the jury was not given a proper limiting instruction, this Court can look at the record and apply the Coleman/Billiot definition and find that this aggravating circumstance was adequately supported by the evidence.
First, Cartwright recognizes that Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980)
plainly rejected the submission that a particular set of facts surrounding a murder, however shocking they might be, were enough themselves, and without some narrowing principle to apply to *1369 those facts, to warrant the imposition of the death penalty.
Cartwright, ___ U.S. ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 381-82. The Oklahoma court had made a similar attempt, one which the Supreme Court in Cartwright found "indistinguishable". Cartwright concludes that the Oklahoma court's
conclusion that on these facts the jury's verdict that the murder was especially heinous, atrocious or cruel was supportable did not cure the constitutional infirmity of the aggravating circumstance.
___ U.S. ___, 108 S.Ct. at 1859, 100 L.Ed.2d at 382.
All of this, of course, is nothing more than a corollary of the premise that under our system the Circuit Court jury is the factfinder and the sentencer, not this Court. Thus it matters not whether we correctly understand the law as mandated by Cartwright and Coleman. The body that must under the Eighth Amendment understand that law is the jury  the body which performs the functions of finding aggravating circumstances, of weighing and balancing those circumstances against mitigating circumstances, and of returning the verdict of life or death.

IV.

A.
Cartwright thus decrees vacation of the "especially heinous, atrocious or cruel" aggravating circumstance found by the sentencing jury in Clemons' case. State statutory law  Miss. Code Ann. §§ 99-19-101(2) and (3) (Supp. 1987), augmented on one crucial point by Furman-Gregg-Godfrey-Cartwright doctrine, then makes clear that the case must go back for a new sentencing hearing.
The state law point first. The majority's bottom line is an expression of opinion about what it cannot know.
We ... are of the opinion beyond a reasonable doubt that the jury's verdict would have been the same with or without the "especially heinous, atrocious or cruel" aggravating circumstances.
This "opinion" is demonstrably erroneous in fact. More important, it is without significance in law.
Once one aggravating circumstance is invalidated, no one can say whether that would  or would not  have altered the outcome of the jury's weighing and balancing process. Stripped of the weight of the "especially heinous, atrocious or cruel" aggravating circumstance, we cannot sensibly say that the scales would  in the sentencing jury's perception  have tipped toward death.
Legally, it is not this Court's opinion that counts, but the jury's. Under our law only a jury has power to impose a death sentence. Section 99-19-101(2) places upon the jury the balancing task. The critical point becomes the language of Section 99-19-101(3)
(3) For the jury to impose a sentence of death, it must unanimously find in writing the following:
* * * * * *
(b) That sufficient aggravating circumstances exist as enumerated in subsection (5) of this section; and
(c) That there are insufficient mitigating circumstances, as enumerated in subsection (6), to outweigh the aggravating circumstances.
In each case in which the jury imposes the death sentence, the determination of the jury shall be supported by specific written findings of fact based upon the circumstances in subsections (5) and (6) of this section and upon the records of the trial and the sentencing proceedings. If the jury does not make the findings requiring the death sentence, the court shall impose a sentence of life imprisonment.
A jury has to perform the weighing and balancing and then report in writing its findings. Without that written report, no person may lawfully be sentenced to death. Since one aggravating circumstance has been removed, the first jury's report should be held for naught and a new report sought.
*1370 All of this is legally analogous to what happened in Pinkton v. State, 481 So.2d 306, 310 (Miss. 1985). In Pinkton, we honored a state statute that required, as a prerequisite to a death sentence, written Enmund findings made by a jury. Here Section 99-19-101(3) requires written balancing findings. As in Pinkton we should reverse and remand for a new sentencing hearing.

B.
Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) is a red herring. Stephens decides a question of federal constitutional law which is not before the Court today. We are concerned here with a question of (federally permissible) state statutory law, the core provision of which is that the only body authorized to perform the balancing and weighing of aggravating and mitigating circumstances is the jury.
The Stephens opinion tells us forthrightly it has no application to today's question.
... [W]e do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is "invalid" under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty.
Zant v. Stephens, 462 U.S. at 890, 103 S.Ct. at 2750. Mississippi has precisely that sort of statutory scheme, as the discussion above of Sections 99-19-101(2) and (3) makes quite clear.
In footnote 12 the Stephens opinion notes four states  with statutes like Mississippi's  which require that in cases arising in today's posture the death sentence be vacated. Zant v. Stephens, 462 U.S. at 873 n. 12, 103 S.Ct. at 2741 n. 12. See Williams v. State, 274 Ark. 9, 10, 621 S.W.2d 686, 687 (1981); State v. Irwin, 304 N.C. 93, 107-08, 282 S.E.2d 439, 448-49 (1981); State v. Moore, 614 S.W.2d 348, 351-52 (Tenn. 1981); Hopkinson v. State, 632 P.2d 79, 90 n. 1, 171-72 (Wyo. 1981). The common denominator in these four cases is a statute that
requires the jury to weigh the aggravating circumstances against the mitigating circumstances when it decides whether or not the death penalty should be imposed.
Zant v. Stephens, 462 U.S. at 873 n. 12, 103 S.Ct. at 2741 n. 12.[2] As explained above, precisely the same requirement may be found in our Section 99-19-101(2).
To be sure, we have a series of cases which in cryptic fashion have uttered dicta arguably related to today's issue, as the majority is quick to point out. Several of these cases contain nothing beyond the Zant v. Stephens truism that as a matter of federal constitutional law, in cases where the death penalty has been predicated upon multiple aggravating circumstances, invalidation of one does not necessarily render the sentence infirm. See, e.g., Nixon v. State, 533 So.2d 1078 (Miss. 1987); *1371 Lockett v. State, 517 So.2d 1317, 1336 (Miss. 1987); Stringer v. State, 500 So.2d 928, 945 (Miss. 1986); Irving v. State, 498 So.2d 305, 314 (Miss. 1986). Not a word in these cases addresses the state statutory law question here presented. Nor do any of these decisions hold invalid any aggravating circumstance.
Similarly, Evans v. State, 422 So.2d 737, 743 (Miss. 1982); and Gilliard v. State, 428 So.2d 576, 586 (Miss. 1983) are not authority to the contrary. First, the "especially heinous, atrocious and cruel" aggravating circumstances were not vacated in those cases. Second, nothing in Evans and Gilliard confronts the fact that (a) the jury is the only body empowered by our law [Section 99-19-101(2)] to perform the balancing act and (b) that a statutory prerequisite [Section 99-19-101(3)] to a death sentence is the jury's written report of the outcome of its balancing process.
The language relied upon was in no sense necessary to the decision in each respective case nor to the rationale undergirding same. More telling, the Section 99-19-101(2) and (3) point explained above today was not argued by counsel in any of the above cases, is not mentioned in the Court's opinion, nor insofar as appears has it before today been thought of by any member of this Court. I find quite odd the suggestion that these cases decide today's question.[3]

C.
There is a federal constitutional infirmity in today's decision. I refer to the holding that, even without the "especially heinous, atrocious and cruel" aggravating circumstance, the jury would still have sentenced Clemons to die, that is, the jury would still have found that the remaining aggravating circumstance was sufficient to outweigh any mitigating circumstances.
Eighth Amendment jurisprudence from Gregg and Godfrey to Cartwright holds that, before a death sentence may lawfully be imposed, the sentencer's discretion must be rationally guided or channeled. The unmistakable effect of the majority's opinion is that this Court is performing the balancing function in Clemons' case. Without doubt, the sentencer need not be the jury, as the Florida experience teaches. But federal law (not to mention common sense) wholly precludes separation of the power to sentence and the responsibility for weighing and balancing the aggravating and mitigating circumstances. If the sentence is to be the product of the balancing process, then that process may only be performed by he who has authority to sentence.
The answer to the majority is that nothing in Mississippi law gives this Court the authority to impose a death sentence, even in the guise of speculating what the jury would have done, under circumstances never presented to it. Federal law precludes our divorcing the balancing power from the sentencing power and arrogating unto ourselves the latter.

V.
In conclusion, on the combined authority of Cartwright and Section 99-19-101(2) and (3), I would reverse Clemons' sentence of death and remand to the Circuit Court for a new sentencing hearing.
PRATHER, J., joins in this opinion.
HAWKINS, P.J., joins this dissent as to reversal only.
NOTES
[1] The agreement provided that, if Calvin testified truthfully against Clemons and another coindictee, the State would not seek the death penalty against Calvin, would see that he was not housed in a penal facility where either of his co-indictees were housed, and that his trial testimony could not be used against him in any trial of the charges against him.
[1] What happens to the death sentence imposed on Clemons is the subject of Part IV below.
[2] Post-Stephens footnote 12 cases to like effect include:

A. Pennsylvania
Commonwealth v. Travaglia, 502 Pa. 474, 467 A.2d 288, 307 (1983): In this case the Court affirmed a death sentence, but in a concurring opinion by Judge Nix cites Zant's footnote 12 and says that the Court should be forbidden to reweigh.
B. Arkansas
Collins v. Lockhart, 754 F.2d 258, 267 (8th Cir.1985). In this case the Eighth Circuit interpreted Arkansas law to say "as a matter of state law, once an aggravating circumstances drops out, the sentence of death must be set aside."
C. New Jersey
State v. Biegenwald, 96 N.J. 630, 477 A.2d 318, 321 (1984). This case says "improper introduction of a (prior conviction) judgment as an aggravating factor would result in a need for resentencing."
D. Oklahoma
Johnson v. State, 665 P.2d 815, 827 (Okla. Crim. App. 1983). Here the court was "unwilling to speculate as to effect the improper aggravating circumstance (murder for remuneration) had on the jury's recommendation ..." The court modified the sentence to life.
Boutwell v. State, 659 P.2d 322 (Okla. Crim. App. 1983). Supreme Court found one aggravating circumstance improperly instructed on, it would not speculate as to what jury would do; rather it modified sentence to life.
[3] The most charitable statement one may make of the Fifth Circuit's cryptic footnote in Edwards v. Scroggy, 849 F.2d 204, 211 n. 7 (5th Cir.1988) is that it is wrong.